It is admitted, that actions of this kind have been supported in the Superior Court; and the reasons in *Pollard* v. *Lyman*, in this Court, do not counteract these decisions. In *Norton* v. *Hatheway*, they must have been recognized. The principles of that case were the same as of this, although it was not so strong a case. If, then, it were clear, that such actions could not be sustained in Great-Britain, our courts have gone too far to recede.

The practice of procuring decoys is the most effectual instrument of fraud, that was ever devised; and has always been held sufficient to vitiate a contract, as in cases of insurance, &c. It is as consistent with justice, as with sound policy, that such persons should feel the arm of the law.

BY THE COURT,

The judgment was affirmed.

## Smith *v.* Blake.

In the Court below,

ELI SMITH, *Plaintiff;* REUEL BLAKE, *Defendant.*

An action on the case will not lie in favor of the creditor of a person who is insolvent, against a third person, charging him with having fraudulently taken and claimed the property of the insolvent, as his own, to defraud the creditors.

THIS was an action on the case, stating, that *Stephen Ranney* was indebted to the plaintiff, to a certain amount, by two promissory notes; that a short time before the same became due, he was the owner of considerable property, as oxen, cows, &c. and had the improvement of a forge, &c. more than sufficient to pay said demand; that being in debt, and embarrassed, he proposed to the defendant to assist him in concealing his property, from his creditors; that the defendant, to effect this purpose, pretended to hire himself to said *Ranney,*

and soon afterwards claimed, that *Ranney* was greatly indebted to him for services, &c. and took an assignment of all *Ranney's* visible property ; that the defendant ostensibly appeared to be the owner thereof, by using it, &c. and, till within a short time, had always affirmed to the plaintiff, and the world, that the property came into his hands, in a legal manner, and in good faith, and that he was a large creditor to *Ranney*, and knew no means of satisfying his debt ; and that the plaintiff was thereby induced to suffer his claim to remain dormant, and had never been able to secure the same. The declaration then averred, that *Ranney* was never indebted to the defendant, and was, in fact, the owner of all the property, which apparently belonged to the defendant ; that the defendant, for his labor, was secretly paid out of the avails of the iron business, &c. and that *Ranney* was entitled to the residue of the avails, though the same were secreted by the defendant. And the defendant, designing to injure the plaintiff, in pursuance of his combination with *Ranney* to cover and conceal his property from his creditors, held the same under false colours ; and in September last, actually levied upon said property, in his own name, as being the property of *Ranney*, though then it was actually in his own possession ; by means whereof the plaintiff has been prevented from collecting his debts, and lost the same, *Ranney* being a bankrupt, and wholly unable to pay. Writ dated March 13th, 1801.

The defendant pleaded the general issue, and a verdict was found for the plaintiff.

On a motion in arrest, for the insufficiency of the declaration, the Superior Court adjudged the same to be insufficient.

*Ingersoll*, and *Smith*, (of Litchfield) for the plaintiff in error.

This declaration states, that the plaintiff was a creditor of *Ranney* ; that the defendant combined with *Ranney* to cheat him out of his debt ; that he received *Ranney's* property, and affirmed that it was his own, and thus prevented the plaintiff from securing himself ; that the same was false and fraudulent, and designed to injure the plaintiff ; and that, in consequence thereof, the plaintiff actually lost his debt. Had the plaintiff levied upon this property as *Ranney's*, he could have held it ; if, therefore, the defendant affirmed facts to exist, which did not exist, and the plaintiff has been deceived thereby, the case compares with *Pasley* v. *Freeman.* (a) It makes no difference whether he told a lie in terms, or held out false colours. If a person dresses out a poor man as a gentleman ; goes with him where they are not known ; gives him a title, &c. though he says, when enquired of respecting the circumstances of the man, that he does not know what they are ; still he will be liable, if such person gain credit, in consequence of such appearances. So, if one secrete a bankrupt, and tell an officer, that he knows nothing about him, the Superior Court have decided, that such person shall be liable.

Had the plaintiff gone with his writ, and been prevented from serving it, by this affirmation of the defendant, an action would have lain. And it is no objection, that many persons might bring suits, if he had been the instrument of defrauding many ;—though, perhaps, the Court would say, that the first should hold to the amount of the property concealed.

(a) 3 *Term Rep.* 51.

The statute respecting fraudulent conveyances (b) may be cited against us; but from that statute we contend, that this action may be maintained, because the *plaintiff is aggrieved.* The statute, indeed, speaks of a *qui-tam* process; and such an one doubtless might have been brought, had it been commenced in time. But if a statute gives a penalty, may not an action at common law lie for the same offence, where the penalty has been waived? Where a bond, with penalty, was taken by a master, to secure the stay of his servant, it was held, that an action would not lie against the person enticing him away, *after* the bond had been collected; (c) but it seemed to be admitted, that had not the bond been collected, it would have been sustained. Here, the remedy upon the statute has not been pursued; the *party aggrieved,* therefore, may have an action at common law.

*Gould,* for the defendant.

The present action is as novel in principle, as destitute of precedent. Fraud without damage, or damage without fraud, does not constitute a ground of action.

The plaintiff states that he had a claim against *Ranney;* and the defendant fraudulently accepted the property of *Ranney.* But does the plaintiff state, or could he know, that if this had not been done, he should have been the first to attach this property, or that there was sufficient of it to satisfy all the creditors? The plaintiff had no lien upon the property; it remained the property of *Ranney.* But, it is said, it was done with a fraudulent intent; but the damage to the plaintiff is no greater, than if there had been no such intent.

(b) *Stat.* 217.       (c) 3 *Burr.* 1345, *Bird* v. *Randall.*

1804.

SMITH
v.
BLAKE.

No *right* of the plaintiff's has been affected. There was only a chance that he might have a right. Suppose C. is a creditor of A.—and B. cheats A. out of his estate ; can C. recover of B. because by his conduct C. has lost his debt ? Or, suppose that C. is about to conclude an advantageous bargain with A.—and B. knowing of it, to defraud C. destroys the property, which C. was to receive ; can C. maintain an action, having no right to the property ? Let the fraud be as great as can be imagined, C. having no right to the property, can have no right of action.

But the plaintiff has not even stated, that he should have attached this property as *Ranney's*. In *Pasley* v. *Freeman*, there was not only the grossest fraud stated, but, also *great damage*.

Again, it is not stated, in this declaration, that the property was concealed. The plaintiff might, therefore, have attached it. The averment, that he was prevented, &c. is merely an inference from the facts before stated. Neither is any rule of damages stated. The defendant is equally liable to all the creditors of *Ranney*, and may be subjected to a thousand fold more than the amount of the property received. *Civil actions* will, in this way, be made the instruments of *vindictive justice*. And, by the same rule, the creditors of *Ranney's* creditors may maintain an action against the defendant. The principle contended for by the plaintiff opens a door to litigation, without end.

Our statute against fraudulent conveyances has provided a remedy ; and part of the penalty is given to the party aggrieved, and part to the public. After this, he surely is not to be liable to all the creditors. The stat-

ute of Elizabeth, of which ours is a transcript, has existed about 250 years, and was in affirmance of the common law. Many fraudulent conveyances have doubtless been made since, in Great-Britain; but never was an action of this kind brought into Westminster-Hall.

BY THE COURT,

The judgment was affirmed.

1804.

Sмiтн
v.
Blаке.

## Lewis v. Martin.

### In the Court below,

HENRY MARTIN and MARY his wife, *Plaintiffs;* JOHN
LEWIS, *Defendant.*

THIS was an action of account, brought, in the County of Windham, upon the statute relative to auditors and actions of account, stating, that *Mary Martin,* one of the defendants, and *Henry Martin, in right of his said wife,* were seized and possesed of two thirds of an undivided tract of land in the *Town of Union,* in the *County of Tolland;* and the defendant was seized of the other undivided third part of said land, as tenant in common with the plaintiffs, and the defendant had cut and carried away trees from said land, and refused to account with the plaintiffs for two thirds of the profits, or any part thereof, &c. The plaintiffs were described as of Woodstock, in *Windham County,* and the defendant as of Ellington, in *Tolland County.*

Husband and wife may join in an action of account, for rents and profits of the wife's lands, arising during the coverture.

And such action may be brought in the county where the plaintiffs live, although the land lies in another county.

To this action there was a plea in abatement:

1. That the action was brought for facts alleged to have been done in the County of Tolland, concerning