ABNER AUSTIN AND ANOTHER *vs.* SHERMAN A. BARROWS AND OTHERS.

An action for fraudulent acts, intended to induce, and by which a creditor was induced, not to secure a debt by legal process, by which means he lost the debt, will not lie at common law.

And it makes no difference if a conspiracy for the purpose is charged.

The damages are too remote. They must be the clear and necessary consequence of the fraudulent act and of a character to be clearly defined and ascertained.

Where an action of trespass on the case at common law was brought against a debtor and two other defendants, charging a conspiracy to defraud the plaintiff of his debt, and alleging that the defendants fraudulently removed the debtor's goods to prevent their being taken by legal process, it was held that even if the plaintiff could have taken judgment against the debtor alone, for "removing his goods to prevent their being taken on legal process," under the statute (Gen. Statutes, tit. 1, sec. 370) giving a right of action for such acts, yet that the court committed no error in not taking judicial notice of the statute and of its own motion rendering such judgment.

ACTION on the case for fraud; brought to the Superior Court in New Haven County. The declaration was as follows :—

To answer unto Abner Austin and Elijah Gilbert, partners in business, under the name of Austin & Gilbert, in a plea of trespass on the case, whereupon the plaintiffs declare and say, that heretofore, to wit, on the 1st day of March, 1867, the said Sherman A. Barrows was justly indebted to the plaintiffs in the sum of $900, of which the sum of nearly $530 was evidenced by a note with the interest thereon of the said Barrows to the plaintiffs, dated April 27th, 1866, for the sum of $500, payable on demand, with interest, and the balance of said indebtedness accrued by reason of goods before that time furnished to the said Barrows by the plaintiffs, at his special instance and request, and that the said Barrows has so continued indebted to the plaintiffs to the present time ; that while said indebtedness existed, to wit, on the 1st day of March, 1867, the said George B. Bates, Sherman A. Barrows and Henry E. Fenn conspired together to defraud the plaintiffs, and the other creditors of said Barrows, of the sums of money then due them, severally, from

said Barrows ; that said Barrows then was keeping a livery stable in said New Haven, and owned horses, carriages, sleighs and other vehicles, harnesses, robes, blankets and other personal property of the value of $10,000 and more, and was owing merchants, mechanics and others various sums of money, amounting in all to $14,000 and upwards ; that in pursuance of said fraudulent combination, and with the fraudulent intent aforesaid, it was, at said New Haven, on the day and year last aforesaid, fraudulently contrived and agreed by and between the said Bates, Barrows and Fenn, that said Barrows should make to said Fenn a transfer of all his said personal property, and deliver said property to said Fenn ; that said sale and delivery should be in form legally sufficient to convey the title thereto to said Fenn, but that in fact, and as between said parties, they should be merely colorable and of no effect; that the same should be so far carried into effect as to place said property beyond the reach of legal process, and to prevent the plaintiffs and the other creditors of said Barrows from collecting their said claims against the said Barrows, or any portion thereof; that said colorable sale should be in form for a valuable consideration, but that no consideration should in fact be paid, and that said property should be so conveyed away and concealed that the plaintiffs and said other creditors should be wholly unable to collect their said claims, and that said defendants should by false and fraudulent representations as to the financial condition of said Barrows, induce the plaintiffs and the other creditors to refrain from taking any legal measures to collect their said claims, and to acquiesce in said fraudulent transfer of said property ; that in pursuance of said fraudulent combination and with the aforesaid fraudulent intent, at said New Haven, on the 1st day of April, 1867, the said Barrows made a colorable and collusive sale of all his said property, consisting of [describing it], all being of the value of $10,000 and more, for the nominal sum of $5,765 ; that said price was thus in form and nominally fixed by said parties as the price at which the same should be so sold as aforesaid by said Barrows to said Fenn. in order more completely to deceive the plaintiffs

and said other creditors as aforesaid; that said Fenn, then and there in further accomplishment of the said objects of said conspiracy, and with the like fraudulent intent, delivered to said Barrows the check of one Botsford for $2,000, three notes of hand, of $1,000 each, payable respectively in twelve months, eighteen months and twenty-four months from their date, and one promissory note for $765, payable eight months from its date, all said notes being without interest; that said check and notes were by said Barrows then and there delivered to said Bates, and by said Bates they were then and there delivered back to said Fenn, nothing ever having been paid thereon, in pursuance of said conspiracy and with the aforesaid fraudulent intent; that it was also then and there by said defendants further agreed that said Barrows and his said co-conspirators should represent to the plaintiffs and to the other creditors of said Barrows that said Barrows had in good faith sold and conveyed all his property to the said Fenn for $5,765, and that the same was the full and fair value thereof, and that $4,100 thereof had in fact been used and expended by said Barrows in good faith, in part in paying certain privileged debts which Barrows then owed, in part in taking up certain notes for which said Barrows was indebted, which had matured and were held by certain banks; in part in the payment of certain discounts on notes, and in the allowance of certain discounts on notes which said Barrows had taken for the property he claimed to have sold and conveyed; in part for repairs on his carriages, and for family and special expenses, and in part to compensate his son, for four years services claimed to have been rendered to said Barrows and for the family of said Barrows; and that the proceeds of said sale had been used as follows, viz, [giving the items in detail]; that said Barrows had left to pay his said creditors only the sum of $1,665, and could therefore pay only twelve cents on the dollar of his indebtedness; that, in further pursuance of said fraudulent combination, and with the like fraudulent intent, the said defendants did then and there make to the plaintiffs and to the other creditors of the said Barrows all the aforesaid representations, and declared them to be true,

whereas in truth and in fact each and all said representations were untrue, as said defendants well knew; that in pursuance of said fraudulent combination, and with the fraudulent intent aforesaid, and to lull the suspicions of the plaintiffs and said other creditors of the said Barrows, and to induce them to refrain from collecting their said claims out of the property and estate so owned by the said Barrows as aforesaid, said defendants further represented to the plaintiffs and said other creditors of said Barrows, that said Barrows would divide pro rata among his several creditors all his property, so that each creditor should receive the same percentage on his claim that the other creditors received, and that the same would be twelve per cent. of all such claims, provided the plaintiffs and said other creditors refrained from commencing suits and attaching the property of said Barrows; which said representations and promises were so made by said defendants the more effectually to enable the defendants to convey away the property of said Barrows, and appropriate and convert it to their own exclusive use; that the plaintiffs relying upon the truth of all said representations and promises of the defendants, and being deceived thereby, neglected to take any legal steps to enforce the collection of their said claim against said Barrows; that said defendants, pursuant to said fraudulent agreement, and with the aforesaid fradulent intent, secretly and fraudulently conveyed away and converted to their own use all the aforesaid property of said Barrows, so that the plaintiffs were wholly unable to collect by legal process or otherwise any portion of their said claim against said Barrows. And the plaintiffs say, that at the time when said conspiracy was entered into by the defendants as aforesaid, said Barrows was the owner and possessor of property sufficient to have paid all his then indebtedness to the plaintiffs and to his other creditors in full, to whom the same equitably and of right really belonged, and that the plaintiffs could and would have collected by suit or otherwise their said claim against the said Barrows but for said conspiracy and fraudulent acts of said defendants;. and that after said fraudulent sale, and before said property had been placed beyond the reach of

Austin *v.* Barrows.

civil process, and before the same or any part thereof had been sold to innocent purchasers, or concealed or destroyed, the plaintiffs could and would have caused the said property to have been divided pro rata among the then creditors of said Barrows, under the provisions of the insolvent law of this state, and of the bankrupt law of the United States, and would thereby have secured and received at least fifty cents on the dollar for every dollar of their said claim against said Barrows, all of which they were prevented from doing by reason of the said conspiracy and fraudulent acts and representations of the said defendants. And the plaintiffs say that the defendants so secretly and artfully consummated their said fraud, that the plaintiffs were unable to and did not discover the fact of said 'fraudulent conspiracy, and that said acts and statements of the defendants were as aforesaid fraudulent and false, until all said property had been so scattered, secreted, sold to innocent purchasers, and the proceeds of the sales spent, that the same could not be found or secured by attachment or otherwise, or by a trustee in insolvency or in bankruptcy, had one been appointed. And the plaintiffs say, that pursuant to said conspiracy, the defendants after said fraudulent sale, and after said fraudulent representations in regard to the pretended disposition of the proceeds of said sale, and to the more certainly prevent the plaintiffs from putting the said Barrows into involuntary bankruptcy and of seeking any legal redress, the defendants fraudulently represented to the plaintiffs that said Barrows had only property left sufficient to pay the plaintiffs and the other creditors of said Barrows twelve per cent. of their several claims and demands against the said Barrows; and that the said Barrows would agree with the plaintiffs and said other creditors to pay said twelve per cent. on their said claims against him, if the plaintiffs and said other creditors would, in consideration thereof, agree to accept the same in full of their said several claims against said Barrows; that the plaintiffs were in consequence thereof induced to and did make with said Barrows the said proposed agreement for said compromise, as did the other creditors of said Barrows;

that said proposal was made by the defendants and said agreement was entered into by said Barrows, merely for delay and to enable said defendants to the more effectually consummate the said frauds and get said· property beyond the reach of legal process; that said property was soon thereafter carried off secretly in the night time by the defendants, and was scattered, concealed and sold, after which said Barrows refused to pay said twelve per cent, or any other sum; but soon thereafter, in further pursuance of said conspiracy, when all said property had been placed by the defendants beyond the reach of creditors and of the officers of the law, the said Barrows made an assignment under the bankrupt law of the United States, and secured in form a discharge from all his liabilities, including the plaintiffs' said claim against him, which discharge was granted before the plaintiffs discovered that the fraudulent conspiracy had been entered into as aforesaid, and before they had learned or could learn the false and fraudulent character of the representations and acts of the defendants hereinbefore set forth. And that in consequence of the fraudulent conspiracy, combination, representations and acts of the defendants aforesaid, the plaintiffs have wholly lost their said claim; that said Barrows has no visible estate, and is largely indebted; and that the plaintiffs have, by reason of the fraud of the defendants as aforesaid, sustained damage to the extent of twelve hundred dollars, to recover which, with their costs, this suit is brought.

To this declaration the defendants demurred, and the case was reserved on the demurrer for the advice of this court.

*L. E. Munson*, in support of the demurrer.

The gravamen of offence charged is the fraud and conspiracy of the defendants, entered into for the purpose of enabling Barrows to cheat and defraud his creditors out of their dues, by enabling him to dispose of his property in such a way that none of its avails should come to their possession, by reason of which they lost their debts. An action on the case cannot be sustained for such a fraud. It is perfectly settled that an action on the case for fraud and conspiracy, in enabl-

ing a debtor to defraud his creditor out of his dues, by secreting and transferring his property, be the fraud never so great, be the conspiracy never so complete, cannot be sustained, unless the creditor's debt was created by the agency of the fraud, or he had some lien upon the property which was defeated, or some right which was lost, or some damage sustained. The lien must be tangible, the right real, the damage certain and capable of legal estimation; none of which things existed in this case. *Smith* v. *Blake,* 1 Day, 258; *Lamb* v. *Stone,* 11 Pick., 527; *Wellington* v. *Small,* 3 Cush., 145; *Moody* v. *Burton,* 27 Maine, 427; *Adler* v. *Fenton,* 24 How., 408; *Hutchins* v. *Hutchins,* 7 Hill, 104; Bump on Fraudulent Conveyances, 505, 506; *Kimball* v. *Harman,* 34 Maryl., 407.

*C. Ives,* contra.

1. If this suit cannot be sustained the plaintiffs are remediless, while the case is one of great fraud. It differs widely from the cases cited by the defendants' counsel, in which it is held that a creditor cannot recover in an action of fraud against his debtor for a fraudulent conveyance of the debtor's estate. In cases where there is a fraudulent conveyance and nothing more, the creditor could have attached the property after the conveyance was made. The fraudulent deeds did not stand in his way. But in this case it was a part of the fraudulent scheme to get all the property out of the way and where it could not be attached or reached by civil process or by a trustee in bankruptcy. This result was attained before the fraud was discovered. Besides, the fraudulent transfer in the case at bar was only a part of the fraud. There were also false and fraudulent representations which united with the fraudulent acts and together made the body of the fraud for which the plaintiffs seek to recover. A recovery has in some cases been denied because attachment laws existed which favored the vigilant, and the court could not know in a given case that the plaintiffs would have been the first to attach if no fraudulent conveyance had been made, and could not ascertain therefore how much the plaintiffs had been damaged. Our laws are different, and in this case it is

admitted that but for the fraud the plaintiffs could and would have secured all their debt by attachment, and have obtained fifty per cent of their claims after a settlement of Barrows' estate in the insolvent or bankrupt court.

2. The property of Barrows was a fund in which the plaintiffs had at least an equitable interest. He had no right to give it away while his liabilities continued. On the strength of that property the plaintiffs may be presumed to have sold him the family groceries for which he was indebted to them when the fraud was perpetrated. By means of the fraudulent transfer and of the fraudulent representations this fund has been placed beyond their reach. If the doors of courts of justice are forever open to aid those who have been deprived of their property by means of fraudulent representations, it is difficult to see why those doors should be forever closed and barred against those who, by means of fraudulent transfers, accompanied and followed up by fraudulent representations and promises, have been prevented from recovering by legal process property which equitably and of right belonged to them. We cannot attach the property fraudulently and collusively sold, for it has been concealed, scattered, sold, consumed, and placed beyond the reach of legal process. A trustee process would be useless, for there are no debtors to be factorized, and no property is so concealed that it can be reached in this way. Chancery cannot help us, for there is no property for a receiver to take or for the court to apportion among the creditors of Barrows; and if there were, no precedent has as yet been cited to justify such a proceeding.

3. It is no answer to say that other creditors may bring similar suits. If they have been severally the victims of the same fraud, it will be a remarkable reason for denying them justice that a number of suits will make the knaves a large bill of expense. This objection applies equally to the suits authorized in a similar case by the 370th section of the act concerning civil actions. *Cowles* v. *Day*, 30 Conn., 406.

4. Nor is it a good reason for withholding from the plaintiffs justice in this case that their damages cannot be ascer-

tained with mathematical exactness. The record discloses that the plaintiffs, but for the fraud, would have obtained more than fifty per cent. of their claim, and that they have certainly lost that much by the fraud. The elements upon which to make up the damages are more clear, definite and certain in this case than they are in half the suits pending in our courts. This is not held to be an objection to a recovery under the statute referred to, where the same precise difficulty exists. Nor is it regarded as a serious objection in other cases like this. In *Penrod* v. *Morrison*, 2 Penr. & Watts, 130, Judge ROGERS, in giving the opinion of the court, says: "This was an action on the case for conspiracy by which the plaintiff has been prevented from recovering his debt. *It would be monstrous* to say that the moment when he was about to obtain the fruits of his judgment, the property of the defendant could be withdrawn in this manner from the reach of his creditors. *The absurdity and injustice of the doctrine would be too glaring to admit of an argument.*"

5. The defendant Barrows is liable in this case if Fenn and Bates are not. He certainly has fraudulently concealed and removed his goods " with intent to prevent the same from being taken by legal process," and the statute above referred to authorizes this suit against him, and the fraudulent representations which were made are not necessary to be alleged or proved in a suit against him, though admissible as a part of the *res gestae*. *Armstrong* v. *Ayres*, 19 Conn., 540; *Cowles* v. *Day*, 30 id., 406; *McCabe* v. *Burns*, 66 Penn. S. R., 356; *Laverty* v. *Vanarsdale*, 65 id., 507. The court below was bound to take judicial notice of the existence of this statute, and if applicable to the case, as we claim it to be, the court erred in not rendering judgment against this defendant under it.

6. But this suit is not simply for damages sustained by the fraudulent assignment and concealment of the property of Barrows, but is brought for this cause *accompanied by and in combination with a variety of false and fraudulent representations* in which all the defendants participated, and which

resulted in damages to the plaintiffs which are admitted. They are all liable in this suit on common law grounds. " The general principle that whenever there is *fraud* or *deceit* by the one party, and *injury* to the other, or *damnum cum injuriâ*, there an action will lie, is very often referred to with approbation, and always recognized as good law." *Lamb* v. *Stone*, 11 Pick., 532; citing *Upton* v. *Vail*, 6 Johns., 181, *Pasley* v. *Freeman*, 3 T. R., 51, and *Eyre* v. *Dunsford*, 1 East, 329.

PARDEE, J. This is an action on the case for fraud; the defendants demurred to the declaration, and the Superior Court sustained the demurrer.

The material allegations in the declaration are — that Barrows, one of the defendants, was justly indebted to the plaintiffs; that he had property liable to attachment sufficient to pay all his debts; that he conspired with the other defendants to cheat and defraud the plaintiffs and his other creditors; that with this fraudulent intent the defendants agreed that Barrows should make a colorable and collusive sale to another of the defendants of property worth more than $10,000 for less than $6,000; that the defendants should by false and fraudulent statements and representations as to the financial condition of Barrows, induce the plaintiffs and his other creditors to refrain from taking any legal measures to collect their claims and to acquiesce in the fraudulent transfer of his property; that the plaintiffs relied on the truth of the statements and representations of the defendants and were deceived thereby and neglected to take any legal steps to enforce their claim against Barrows; that the defendants pursuant to this fraudulent agreement and conspiracy and with this fraudulent intent secretly and fraudulently conveyed away and converted to their own use all the property of Barrows, so that the plaintiffs were wholly unable to collect by legal process or otherwise any portion of their claim against Barrows; that when the fraudulent conspiracy was entered into by the defendants Barrows was the owner and possessor of property sufficient to pay all his

creditors in full, and that the plaintiffs could and would have collected by suit or otherwise their claim against him but for the conspiracy and the fraudulent acts and representations done and made in pursuance of it; and that the defendants so completely consummated their fraud that the plaintiffs did not discover it until the property had been scattered, secreted, and sold to innocent purchasers and the proceeds spent, so that the same could not be found or secured by attachment or otherwise, or by a trustee in insolvency or bankruptcy had one been appointed.

Both principle and precedent compel us to say that these allegations are unequal to the support of this action; and while it is true that courts uphold the general principle that wherever there is fraud or deceit by the one party, and injury to the other, there an action will lie, that principle must be understood with such limitations and qualifications as other principles of law, equally sound, impose upon it. The law does not undertake to redress all moral wrongs; and there may be also legal torts bringing great damage to individuals, but damage so remote, contingent or indefinite as to furnish no good ground of action.

To maintain an action for the deceit and fraud of another, it is indispensable that the plaintiff should show not only that he has sustained damage and that the defendant has committed a tort, but that the damage is the clear and necessary consequence of the tort, and can be clearly defined and ascertained. *Lamb* v. *Stone*, 11 Pick., 527.

So far as the declaration shows, at the time when the acts were performed and the representations were made, of which the plaintiffs complain, they had not obtained, or taken any steps to obtain, any lien upon the debtor's property for the security of their debt by contract or negotiation with him, nor had they acquired any claim upon, or interest in, or right to, any part of it by operation of law. They had taken no steps and formed no plan to procure a writ of attachment whereby to obtain security thereon; and no person had moved in the matter of a division of the property among the creditors, by either bankrupt or insolvent laws. They there

fore lost no lien of any kind in consequence of the acts and representations of the defendants.

The point of their complaint is this:—they now think that if no representations had been made to them they would have obtained a lien by attachment. They cannot make legal proof of this, and we cannot say that such an intent would have ripened into action; the property might have been destroyed before they could place a lien upon it; the debtor might have sold it to innocent purchasers and disposed of the proceeds in many lawful ways; their attachment might have been anticipated by others. The law does not undertake to grasp or measure such an uncertainty as the value of a mere possibility that a creditor may endeavor, at some future time, to obtain security from his debtor.

Again, what rule of damages shall the court apply to this action?

In this form of a special action on the case the plaintiffs do not seek the property fraudulently conveyed, or its proceeds, but a judgment against one or all of the defendants for the damage they have suffered by reason of the fraudulent conveyance. If one creditor may maintain this action, then may every other; each one is entitled to compensation for the injuries suffered from the same cause, and may recover it for himself. Shall the fraudulent purchaser pay all the debts, or a sum as damages equal to all the debts of the fraudulent debtor? The effort to do justice, in this way, might result in great injustice, for the value of the property purchased may be wholly unequal to the amount of those debts.

If the value of the property transferred be not sufficient for all, how shall it be divided among contending creditors seeking payment or damages simultaneously but by different methods? some, perhaps, by actions for fraud; some by trustee process; some, by attaching the property in the hands of the fraudulent vendee. Shall the first in time take his whole debt? or shall one kind of process take precedence of another? Can the plaintiffs resort to more than one of these remedies at the same time? and would the judgment in one be a bar to the other.

As a rule, whenever in actions in form like the one before us individual creditors have been permitted to pursue a debtor alone, or in connection with those combining and conspiring with him, not for the recovery of the specific property sold, or the proceeds thereof, but for damages for fraudulently assigning, conveying away and concealing his property for the purpose of placing it beyond the reach of legal process, the action was authorized by statute and did not proceed upon common law principles.

In *Cowles* v. *Day*, 30 Conn., 410, which was an action upon our statute, by a creditor against his debtor, for the fraudulent removal and concealment of property so that it could not be found to be attached, the court said, " It is of course an action which could not have been sustained at common law." And the Supreme Court of the United States, in *Adler* v. *Fenton*, 24 Howard, 413, says :—" In the absence of special legislation we may safely affirm that a general creditor cannot bring an action on the case against his debtor or against those combining and colluding with him to make dispositions of his property, although the object of those dispositions be to hinder, delay and defraud creditors." In *Smith* v. *Blake*, 1 Day, 258, this court said that an action on the case will not lie in favor of the creditor of a person who is insolvent, against a third person, charging him with having fraudulently taken and claimed the property of the insolvent, as his own, to defraud the creditors. In *Lamb* v. *Stone*, 11 Pick., 527, the court declared that an action on the case for the fraud of the defendant in purchasing personal property of the plaintiff's debtor and aiding the debtor to abscond in order to prevent the plaintiff from enforcing payment of his debt by attaching the property or arresting the body of the debtor, cannot be sustained. In *Wellington* v. *Small*, 3 Cushing, 145, the court held that an action on the case brought against two defendants in which it was alleged that one of them was indebted to the plaintiff, that the two confederated and conspired together to prevent the plaintiff from obtaining security for or payment of his debt, that in pursuance of such purpose and intention and in order

to enable the plaintiff's debtor to take the poor debtor's oath, the defendants caused the property of the latter to be removed from his own custody and possession into the possession of the other defendant, by whom the same or the proceeds thereof were kept secreted and concealed from attachment, and that the plaintiff sued out a writ against his debtor to recover his debt and caused his body to be arrested thereon, and that the defendant in that suit took the poor debtor's oath and was discharged from arrest, and the debt remained wholly unpaid, could not be sustained, even with the additional averments of a conspiracy between the plaintiff's debtor and the other defendant to delay and defeat the plaintiff and other creditors, of the insolvency of the debtor at the commencement of the action, and of concealment of the debtor's property by the other defendant; citing the cases above referred to, of *Smith* v. *Blake* and *Lamb* v. *Stone*. In *Moody* v. *Burton*, 27 Maine, 427, the court held that where a fraudulent conveyance of property is made for the purpose and with the intent to defraud creditors, an action on the case to recover damages for that cause, by one of those creditors against the parties to such fraudulent conveyance, cannot be sustained; and that the decision would have been the same if the declaration had contained an averment that an attachment of the property conveyed was prevented by the fraudulent representations of the defendants.

The allegations as to the fraudulent acts of the defendants, —acts performed in combination with a variety of false and fraudulent representations—acts and representations which the defendants combined and conspired to do and to make, have each and all passed under judicial scrutiny and have been found insufficient to support this form of action. The allegation as to conspiracy brings no strength to the declaration, for it shows no additional cause of action. An act which, done by one alone, is no cause of action, is not rendered actionable by being done in pursuance of a conspiracy. The gist of this action is not the conspiracy, but the damage suffered by the plaintiffs. The allegation shows no additional right of the

plaintiffs to the debtor's property and does not diminish the remoteness and uncertainty of their damage.

This is an action on the case at common law, brought by the plaintiffs against their debtor and other defendants for conspiring to conceal, remove, assign and convey away the debtor's property with intent to prevent the same from being taken by legal process; and they say that if this form of action cannot be maintained against them all, yet there is a statute which authorizes a suit against the defendant debtor alone for such acts, of which the court was bound to take judicial notice, and upon it, under these pleadings, render a judgment against him. It was the privilege of the plaintiffs to select that form of action which in their opinion is best adapted to their case. If the action is misconceived it is not within the power of the court to substitute a different one founded upon the statute referred to, simply because the court is aware of the existence thereof. It is not the duty of the court to take judicial notice of statutes for any such purpose.

There is no error in the judgment of the Superior Court.

In this opinion the other judges concurred.