(19 App. Div. 496.)

MARTIN v. CLARK.

(Supreme Court, Appellate Division, Third Department. July 6, 1897.)

1. DECEIT—SUFFICIENCY OF EVIDENCE.
In an action for deceit the plaintiff, in order to entitle him to go to the jury, must give evidence not only tending to show deceit, but also sufficient to authorize the jury to find that he has been damaged.

2. SAME—SUBMISSION TO JURY.
In an action for deceit, plaintiff showed that defendant, by representations which might have been found to be fraudulent, induced plaintiff to renew notes of a company of which defendant was president, and that, before the maturity of the new notes, defendant caused all the property of the maker to be attached by another company, of which he was an officer. *Held*, that as it could only be conjectured that the plaintiff, but for the renewal of his notes, would have realized from the debtor's property before the attachment, the proof was insufficient to justify submission of the case to the jury.

Appeal from trial term, St. Lawrence county.

Action by Orren E. Martin against C. Cooper Clark. From a judgment entered on the direction of the court at the trial before a jury, dismissing the complaint, on defendant's motion for nonsuit at the close of plaintiff's case, plaintiff appeals. Affirmed.

The action was brought to recover damages caused by the fraud and deceit of the defendant in inducing the plaintiff to renew certain notes of the Adirondack Water-Power & Paper Company, an insolvent corporation, and thereby preventing the plaintiff from taking immediate steps for their collection.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

N. M. Claflin, for appellant.
Philo P. Safford, for respondent.

LANDON, J. Deceit causing damage is actionable. Upton v. Vail, 6 Johns. 181; Hubbell v. Meigs, 50 N. Y. 480. We assume for the purposes of our decision that the evidence tended to show deceit upon the part of the defendant, and that the plaintiff would have been entitled to go to the jury upon that question, provided there was also sufficient evidence to entitle him to go to the jury upon the question whether the deceit caused him damage. But we do not think the evidence tended to show, with sufficient certainty to justify its submission to the jury, that the plaintiff sustained any damage. The plaintiff in the fall of 1894 sold pulp to the Adirondack Water-Power & Paper Company, a corporation of which the defendant was the president, and took its notes therefor to the amount of $665, payable about March 1, 1895. The plaintiff indorsed the notes, and transferred them to the State Bank of Norwood. When the notes were about to become due the corporation was hopelessly insolvent,—a fact well known to the defendant and unknown to the plaintiff. Nevertheless the defendant, by representations and concealments, which the jury might have found were made and practiced with the fraudulent intent to deceive the plaintiff, induced him to accept a renewal of the notes by the corporation. The renewal

notes were payable 45 to 60 days later. These renewal notes the plaintiff indorsed, and transferred them to the bank in place of the old ones. The defendant was also the president of the Fidelity Paper Company, another corporation, which was the creditor of the Adirondack Water-Power & Paper Company, for an amount greater than the latter company had means to pay. Both companies had offices in New York, in the same building. Before the renewal notes were given the Fidelity Company commenced an action against the Adirondack Company to recover the debt due from the latter, and the defendant had procured an undertaking to be executed in that action for the purpose of procuring an attachment against the property of the Adirondack Company. The attachment was issued and levied upon all the assets of the Adirondack Company after the renewal notes were made, and before plaintiff knew of the insolvency of the latter company. Under the attachment all the property of the Adirondack Company was sold for less than the amount due the Fidelity Company. The plaintiff's position is that but for the renewal of the notes he would have taken such proceedings upon their dishonor as would have protected him against loss. This is conjectural, and not certain. Evidence of conjectures is not evidence that the conjectures and the facts are the same. It only amounts to proof that the plaintiff believes that he could and would have realized as he now thinks he might have done. Perhaps he would, and perhaps not. It is not improbable that, if he had refused to renew the notes, the attachment would have been issued and served before the notes matured, and then he would have been obliged to attack the attachment. It is not difficult to see that, if he had treated the renewals as void because fraudulently procured, he would have had the same grounds for assailing the attachment as if he had not renewed the notes. In either case, how the matter would have turned out we can only conjecture. The plaintiff failed to prove any damage. And to this effect are the authorities in similar cases. Wemple v. Hildreth, 10 Daly, 481, cited with approval in Improvement Co. v. Chapman, 118 N. Y. 289, 23 N. E. 187, and in Roome v. Jennings, 2 Misc. Rep. 257, 21 N. Y. Supp. 938; Austin v. Barrows, 41 Conn. 287; Lamb v. Stone, 11 Pick. 527; Bradley v. Fuller, 118 Mass. 234; Dudley v. Briggs, 141 Mass. 582, 6 N. E. 717. We are cited to no cases to the contrary; the plaintiff assuming that, but for the fraudulent concealment of the fact of the attachment, the plaintiff would have proceeded at once to collect the notes. Even so; that is not proof that he would have collected any part of them. Judgment affirmed, with costs. All concur.