WILLIAM L. BITZER v. LOUISA A. WASHBURN, Appellee.

**Judgments:** CONSPIRACY TO DEFEAT: PLEADINGS: PROOF. A
1  conspiracy to prevent the collection of a judgment, unsupported by proper allegations and proof of the use of unlawful means to accomplish the result, is not the basis of a civil action for damages.

**Conspiracy:** PLEADINGS. In an equitable action for damages
2  based on an alleged conspiracy to defeat the collection of plaintiff's judgment, to which a demurrer was entered, the allegations of the petition are considered and held insufficient to state a cause of action, no unlawful act in pursuance of the claimed conspiracy being shown.

**Equitable Relief:** ATTACHMENT. A suit in equity is not the proper
3  proceeding to reach the funds of a debtor in the hands of a third party, where the creditor has acquired no lien on the funds; the proper remedy is by attachment.

*Appeal from Muscatine District Court.*—HON. P. B. WOLFE, Judge.

WEDNESDAY, OCTOBER 21, 1903.

ACCORDING to the petition a judgment had been entered against Louisa A. Washburn in 1887. Execution issued thereon September 27, 1898, and was levied on a house and lot in Muscatine owned by her. Sarah E. Lohr was served with notice of garnishment on the same day, and made answer to the officer serving the notice. Later the realty was advertised, and bid in at the sheriff's sale, occurring October 29th of the same year, by the plaintiff, then owner of the judgment, for the full amount due

thereon, with costs. Thereupon Mrs. Lorh's attorney, by
directing the court's attention to the satisfaction of the
judgment, procured her discharge as garnishee. She then
paid Mrs. Washburn the remainder of the purchase price
except $343, which was deposited with Jayne & Hoffman
to save her harmless in a suit to be brought to set aside
the sheriff's sale, to be paid to Mrs. Washburn, less
attorney's fees should the suit prove successful; otherwise
for redemption from such sale. Suit was instituted as
proposed, and the certificate of sale set aside. Thus both
the realty and the purchase price eluded plaintiff in his
efforts to enforce his judgment against Mrs. Washburn.
The plaintiff seeks through this suit in equity to reach the
fund in the hands of Jayne & Hoffman to satisfy the
amount bid at the sheriff's sale, with interest and
attorney fees expended; and, if this no longer remains in
their custody, then judgment against all the defendants.
He also asks judgment against defendants for all the
expenses he has incurred in the litigation. The decree
setting aside the sheriff's sale is not assailed, and the
house and lot must be treated as having been sold before
the levy of the execution, and, of course, the order dis-
charging the garnishee is to be regarded as rightly entered
unless the allegations of the petition, if accepted as true,
are sufficient to establish its invalidity. The plaintiff, in
addition to the recital of the above matter, avers: That
Chas. A. Lloyd was agent for Mrs. Washburn in negotiating
the sale, and William Hoffman was attorney for Mrs. Lohr,
to see that she should obtain an unincumbered title, and
subsequently became the attorney of Mrs. Washburn, by
contract with Lloyd, to defeat the garnishment proceed-
ings against Mrs. Lohr. That these parties had knowledge
of the plaintiff's judgment, and conspired together to
defeat its collection and to defraud the plaintiff. That
Lloyd and Hoffman, in pursuance of said conspiracy, ad-
vised Mrs. Lohr to go into possession of the premises,

which she claimed to have done prior to the levy of the execution. That she answered as garnishee, when served with notice, to the officer, under the direction of Hoffman, to the effect "that she had agreed to buy the said property, and had paid ten dollars on account of the purchase price, and that the deal or trade was to be consummated if the title should prove satisfactory," and was notified to appear and answer at the next term of court. That, "having so answered as to create the conviction that the title to the realty levied upon by plaintiff had not passed to her at the time of the levy," neither she nor either of the other defendants, although knowing of the levy upon and sale of the realty, made any objection thereto. That plaintiff, relying upon the truthfulness of the answer, and also the failure of any of defendants to make objection, bid in the property at the full amount of the judgment and all costs. That William Hoffman, while professedly acting for Mrs. Lohr, was really acting for Mrs. Washburn in procuring the discharge of the garnishee without notice to plaintiff. That the defendants, in testifying in the suit to set aside the sheriff's sale, concealed the payment of any money to Jayne & Hoffman in fraud of plaintiff's rights. That, after decree in said suit had been entered, plaintiff perfected his appeal to the Supreme Court, but when about to prepare his abstract said Lloyd entered into negotiations with plaintiff's attorneys for a settlement, and requested that no further expense be made in preparing an abstract until he could communicate with and receive an answer from Mrs. Washburn, who resided in California, and thereby induced plaintiff's attorneys to postpone filing said abstract beyond the time for filing the same, and then refused their proposition of settlement. That thereafter said Hoffman took advantage of said default, and, in pursuance of said conspiracy, filed a motion to dismiss the appeal, which was sustained. That, had Mrs. Lohr stated the facts as she now claims them in her

answer as garnishee, or given notice thereof to plaintiff at any time before the sale, all the subsequent litigation would have been avoided, and plaintiff able to collect his claim. That said Hoffman would have so advised her but for his employment by Mrs. Washburn at the same time. "That claiming to the said district court, as reason for the discharge of the said Sarah E. Lohr as garnishee, that the execution had been satisfied by a sale of realty which she intended afterwards to and did contest as void, and in fact no sale, was a fraud upon this plaintiff and upon the court, and was all in pursuance of a conspiracy engineered by the said William Hoffman, and assented to and participated in by the said Sarah E. Lohr and Chas. A. Lloyd, first, to induce and compel a sale of the realty by suppressing and concealing the claims they ultimately intended to make concerning the title to the realty; and, second, to procure a release of a garnishment, which all of the defendants knew was valid if their claims were truthful as to the condition of the title to the realty when it was levied upon; and, finally, having procured the garnishment to be released, to conceal enough of the purchase money in the shape of a deposit to protect Mrs. Lohr from payment of the judgment in any event, and then for the first time to assert such claims to the real property as to have the sheriff's sale thereof held to be invalid." That there is no adequate remedy at law, and ordinary proceedings would enable Jayne & Hoffman to transfer the fund in their hands beyond the court's jurisdiction. The prayer was for the relief heretofore stated. A general demurrer was sustained, and, as plaintiff failed to plead over, the petition was dismissed. Plaintiff appeals.— *Affirmed.*

*Richman & Richman* for appellant.

*Jayne & Hoffman* for appellees.

LADD, J.—The vice running through appellant's argument is the assumption that defendants owed plaintiff the duty of aiding him in the enforcement of his judgment.

1. JUDGMENTS: conspiracy to defeat: pleadings: proof.

They were under no such obligation, but had the right to resist its collection in every proper and legitimate way. The mere allegation that the defendants conspired or confederated together is of no consequence, unless it farther appears that they so did to do an unlawful act, or a lawful act in an unlawful manner. *McHenry v. Sneer*, 56 Iowa, 652; *Kelly v. Ry.*, 93 Iowa, 436. And to maintain a civil action for damages something in pursuance of the conspiracy must have been done, occasioning injury from which the damages have proximately resulted. 6 Am. & Eng. Ency. of Law, 874. A conspiracy cannot be made the subject of a civil action unless something is done which, without the conspiracy, would give a right of action. *Beechley v. Mulville*, 102 Iowa, 611; *De Wulf v. Dix*, 110 Iowa, 559. As tersely remarked by Judge Knowles in *Philbrook v. Newman* (C. C.) 85 Fed. Rep. 140, "It is not wrong for a man to conspire with others to do a legal and proper act." Now, the prevention of the enforcement of a judgment is no wrong, unless accomplished by illegal means. While there is a diversity of opinion as to whether a conspiracy to remove or conceal property so that it may not be reached by legal process is actionable, the decided weight of authority is to the effect the injury is too remote and uncertain for estimation. *Moody v. Burton*, 27 Me. 427 (46 Am. Dec. 612); *Adler v. Fenton*, 24 How. 407 (16 L. Ed. 696;) *Wellington v. Small*, 3 Cush. 145 (50 Am. Dec. 719 ); *Hall v. Eaton*, 25 Vt. 458); *Green v. Kimble*, 6 Blackf. 552; *Smith v. Blake*, 1 Day, 258. See 6 Am. & Eng. Enc. of Law, 878. In such a case the creditor has lost no claim to or interest in or lien on the property of the debtor, because he had acquired none to lose. "The most that can be said," as

was observed in *Lamb v. Stone*, 11 Pick. 527, "is that he intended to attach the property, and the wrongful act of the defendant has prevented him from executing his intention." The law accurately defines how and when the debtor's property ceases to be subject to his control and disposition, and becomes subject to the claims of the creditor. Until a lien has attached in the manner pointed out by the statute, giving the creditor a specific right in the property, the dominion of the debtor as owner continues, with the perfect legal right to convert into another species or alienate altogether. In some circumstances the property may be followed, but no cause of action for damages can arise in favor of the creditor by reason of the transfer of something he never had. Even if it did, it would be impossible to fix upon any measure of damages at all satisfactory. In the language of *Moody v. Burton, supra*: "The plaintiff had obtained no lien on the property conveyed by attachment, judgment, or in any other manner. Had he special property in or claim to it, the only proof of loss or injury which he could make would be that his debtor had fraudulently conveyed his property without having received any value for it, and with the intent to avoid the payment of his debt, and that he had no other means of obtaining payment. All other creditors could make the same proof. Upon such proof he could not be entitled to recover the amount of his debt, for that is still subsisting, and it may yet be collected. Nor could he be entitled to recover the amount of the property conveyed, for to that he had no better claim than other creditors. He has not, therefore, lost it. If it had not been fraudulently conveyed, it was as probable that it might have been applied to the payment of other debts as to his own. The debtor might have disposed of it fairly, and for a valuable consideration, or have lost it by accident or misfortune. The only loss or injury shown by the proof would be that he had been deprived of a chance or possibility of

obtaining payment from that property. This would be
stating his loss or injury too strongly, for he would still
have the chance of attaching or securing it or its proceeds
in the hands of the fraudulent holder. A jury would
then be authorized to estimate the value of only his chance
to secure it and have it applied to the payment of his debt
while in the hands of his debtor; for this only has he lost.
There would be no data, tables, or other means afforded by
which, such a chance could be estimated. The loss or
injury would be too uncertain and remote for legal estim-
ation." These objections to the maintenance of such an
action are not met by the decisions to the contrary. See
*Mott v. Danforth*, 6 Watts, 304 (31 Am. Dec. 468). And it
follows that the allegation of a conspiracy to defeat the
collection of the judgment did not state an actionable
wrong. It is only when it is proposed to accomplish this
by illegal means, as in *Findley v. McAllister*, 113 U. S.
104 (5 Sup. Ct. Rep. 401, 28 L. Ed. 930), where the defend-
ants, by threats and menaces, deterred persons from bid-
ding on property, and persuaded the taxpayers not to
submit to a tax levied in pursuance of a writ of mandamus,
thereby fraudulently and maliciously obstructing and
defeating the process of the courts. In such a case there
must be a remedy, else an organized band of conspirators
might defeat and render nugatory the judgments of courts.
See, also *Adams v. Paige*, 7 Pick. 542. Unless, then, the
means alleged are to be condemned, the defendants ought
not to be held accountable for what plaintiff was not able
to collect through the process of the court.

It is alleged that in her answer as garnishee,
taken by the officer serving the notice, Mrs. Lohr con-
cealed something; but what it was is not disclosed save in
2. CONSPIRACY: the recital, "having so answered as garnishee
pleadings.     as to create the conviction that the title to
the realty levied upon by the plaintiff had not passed to
her at the time of the levy of the execution upon it." This,

however, is merely the pleader's conclusion, drawn from the answer as heretofore quoted. It is not claimed that she misstated the facts concerning the purchase of the premises, but, as we understand the argument, omitted to relate what had been done under the contract in the way of taking possession. But the statutory questions called merely for the particulars concerning the debt, and these were given. By no fair construction ought a garnishee to be held to also disclose at his peril what has been done with the property in the purchase of which the indebtedness sought to be reached was created. Moreover, under our statute part payment of the purchase price for land is quite as effective in making a binding bargain as taking posession with the consent of the vendor. Certainly the garnishee's answer was enough to put the judgment holder upon inquiry as to the sale of the property, and, had he desired further information, it should have been obtained by taking her answer at the next term of court to which she was ordered to appear. It is said, however, that, but for the fact that Hoffman was acting for Mrs. Washburn as well as Mrs. Lohr, the latter would have more fully answered, and might have deposited the purchase price in the hands of the clerk of court. It is enough to say that the garnishee was under no obligation to so deposit the money owing Mrs. Washburn, and it is none of plaintiff's concern that counsel served both clients. Their interests were not necessarily inconsistent; but, even if they were, and he proceeded with their full consent, it furnished plaintiff no ground of complaint. Without fault on the part of defendant, the plaintiff elected to enforce his judgment against the premises, and, by bidding in the property for the full amount thereof and all costs, abandoned the garnishment proceedings. The return of the execution satisfied the judgment of record, and upon motion of Hoffman, Mrs. Lohr was discharged as garnishee. This was without notice to plaintiff, but none was essential, as he had vol-

untarily made the record exacting such an order by the court. Whether the record *ipso facto* worked her discharge need not now be considered. Besides, it is not claimed that plaintiff had any purpose of resisting or was prevented from doing so.

But it is argued, though not alleged, that in procuring the discharge of the garnishee Hoffman had in mind the purpose of bringing an action to set aside the sheriff's sale, and knew it did not convey the property, and hence that the garnishee was liable but for the satisfaction of the judgment by the sale of the realty. Neither he nor his clients were under obligation to aid or advise their adversary, who, with knowledge which appeared to be satisfactory, elected to proceed against the realty. The record made by plaintiff was presented to the court, and it was not part of Hoffman's duty to point out the mistakes he had made. Even had he declared his purpose of attacking the sale, this would not have furnished a sufficient reason for refusing to release the garnishee. Moreover, it was mere matter of opinion, and the petition avers no material facts within Hoffman's knowledge not possessed by the plaintiff at the time of his election. This being true, he concealed nothing save what he proposed to do in the future, and that he was not required to disclose. The discharge left her free to pay the balance of the pruchase price, and, having done so, in the absence of any misrepresentation, we know of no reason for denying her the right to assert title as against the sheriff's sale. Manifestly her attorney was securing every legal advantage available to his clients, rather than interesting himself in promoting the plaintiff's efforts to collect his claim. It would be strange doctrine to say that one may not avail himself of the mistakes of his opponent. This is the sum total of the accusations lodged against the defendants. The averments with respect to the dismissal of the appeal have no bearing on the discharge of Mrs. Lohr as garn-

ishee, and for this reason demand no consideration. Accepting the averments of the petition relating to the discharge of the garnishee as true, we think no cause of action is stated.

But appellant urges that the fund in the hands of Jayne & Hoffman should be sequestered to the payment of his debt. The trouble is, he has acquired no lien whatever thereon, and it cannot be reached through proceedings of this character. The statutes point out the manner of attaching such a fund, and, as that is wholly adequate, the remedy by equitable proceedings is not available. The mere fact that it might elude ordinary proceedings is not good ground for going into a court of equity, and especially in the absence of an averment that the judgment cannot be enforced against other property of the judgment defendant.

3. EQUITABLE relief: attachment.

The demurrer was rightly sustained, and the ruling is AFFIRMED.