RICHARD AYERS, Appellant, v. RICHARD BROWN, Appellee.

**ATTORNEY AND CLIENT:** Accounting—Sequestering Funds. In an action against an attorney for an accounting for moneys collected, the court should not order the amount due plaintiff to be sequestered in the hands of the clerk of the court to abide the outcome of a partnership between the parties, when such partnership was distinct from the subject-matter of the accounting, it not appearing that plaintiff was insolvent.

*Appeal from Union District Court.*—H. K. EVANS, Judge.

FEBRUARY 5, 1924.

REHEARING DENIED MAY 10, 1924.

ACTION in equity, to compel the defendant, plaintiff's at-

torney, to account to him and turn over certain funds in his hands belonging to the plaintiff. The defendant filed answer and cross-petition, admitting possession of the funds, but setting up the right to retain the same for future application to the payment of plaintiff's share of losses resulting from a joint or partnership transaction, and asking dissolution and settlement of the partnership affairs. The court found that plaintiff was entitled to recover in the sum of $1,175, with legal interest thereon, but directed plaintiff to pay the same to the clerk of the district court, to be held by him pending the adjudication and settlement of the joint or partnership venture. Plaintiff appeals.—*Modified and affirmed.*

*McGinnis & McGinnis* and *E. F. McEniry,* for appellant.

*R. Brown, George A. Johnston,* and *P. C. Winter,* for appellee.

STEVENS, J.—Appellant brings this action in equity, to compel appellee, who is an attorney at law, to turn over to him certain money coming into his hands as appellant's attorney. Appellee answered, admitting the receipt of the money in controversy, but alleged affirmatively that one half of the amount received was due him as attorney fees for services rendered appellant as his attorney, and that he retains the balance to be applied to the payment of losses which he alleges will be sustained by them in a joint or partnership venture on the part of appellant and appellee. In addition, appellee asks that an accounting of the partnership be had, which has no relation whatever to the services out of which his claim for attorney fees arose, and that the partnership be dissolved, and the business fully wound up and settled, and for such further equitable relief as the court may deem proper. The answer and cross-petition of appellee was not assailed in any way, but a reply was filed, denying the allegations of the answer and cross-petition, and setting up other matters not at present material. The court found that appellee was entitled to retain one half of the sum collected by him, and ordered the residue to be turned over to the clerk of the district court, to be held by him pending the final settlement of the alleged partnership.

A brief recital of the evidence to show the transactions involved is necessary. Some time prior to the matters herein referred to, appellant assumed obligations for about $3,900, as surety for one George Hanson, a neighbor in Ringgold County. Hanson defaulted in the payment of the notes signed by appellant, and judgments were secured thereon against him. At this time, appellant owned a tract of 165 acres, on which he resided. This land was incumbered by a mortgage of $2,500. Unable to pay the judgments and mortgage indebtedness, appellant permitted the land to be sold on execution. In the meantime, he had employed appellee to see if something could not be realized out of an estate in Adair County in which Hanson had an interest, to apply on his indebtedness. Appellee secured a quitclaim deed from Hanson of his interest in the Adair County land, and, after considerable litigation, obtained a settlement thereof,—which, as stated, had previously been conveyed to appellee,—for $3,600. $650 of this amount was paid directly to appellant, and the balance to appellee. Appellee claims that, at the time he was employed by appellant, it was orally agreed between them that he should have a sum equal to one half of all that was recovered from the Adair County land. Appellant, as a witness in his own behalf, denied that he ever agreed that appellee should retain one half of the amount recovered, and testified that the only reference to fees at any time between them was that he agreed to pay appellee a reasonable fee for his services. Evidence was introduced, tending to show that the reasonable value of appellee's services was much less than 50 per cent of the amount recovered. On the other hand, appellee and Ferguson both testified that the amount agreed upon was not in excess of a reasonable fee for the services rendered. The testimony of appellee as to the oral agreement is corroborated by J. C. Ferguson, then his law partner, and, to some extent, by the testimony of a stenographer who was at that time employed in his office.

It can serve no good purpose to set out the evidence of the various witnesses on the subject of the oral contract, nor is it our custom to set out the evidence in detail. The testimony of appellant and appellee is in sharp conflict at practically every material point. We are constrained to believe, however, that,

while the fee claimed is large, the alleged oral contract is sustained by the weight of the credible evidence. If the litigation had resulted unfavorably to appellant, appellee, under the agreement, would have been entitled only to receive his expenses. The services rendered appear to have involved a good many matters and considerable labor. The contract being proved, the question of the reasonable value of appellee's services does not enter into the question.

Turning now to the partnership matter, we find the evidence of the principals in even greater conflict. The period of redemption from the execution sale of the Ringgold County farm having expired, action was commenced against appellant to remove him from the possession thereof. This was in March, 1919. Appellant again called upon appellee at his office in Creston, laid the facts before him, and solicited his advice as to the course he should pursue. At first, appellee expressed the opinion that nothing could be done, but, upon procuring an abstract and examining the records, he found that the homestead had not been set off to appellant. Thereupon, he entered into negotiations with the purchaser, which resulted in an agreement on his part to reconvey the land to appellant, upon the payment of the indebtedness and some small items of expense. A contract was prepared to that effect, to which appellee signed appellant's name, as his attorney. The amount necessary to be paid to secure a reconveyance of the land was approximately $9,000. It is conceded that appellee furnished all of the money for that purpose. To do this, he obtained a $5,000 loan from the Federal loan board at Omaha, and the remainder from J. C. Ferguson, then or formerly his law partner. The homestead was set off to appellant, and the remaining 125 acres were conveyed directly to appellee.

The reason assigned by appellee for taking title in his name is that appellant informed him that his wife would not sign the mortgages which it was intended to place upon the farm. Concerning this transaction, appellee testified that it was orally agreed between himself and appellant that they would repurchase the land in partnership, and, after paying all expenses incurred in the management and sale thereof, they would share the profits or losses equally. Appellant denied this alleged oral agreement,

and testified that, on the contrary, it was agreed that he might farm the land for the cropping season of 1919 without rent, and that it would then be turned over to appellee, to do with as he pleased. Appellant paid no rent for 1919, but did pay rent to appellee for 1920. The lease for 1920 was a mere memorandum signed by the parties, in which appellant agreed to pay rent at a fixed price, without designating anyone as lessor. Again, the testimony of appellee is corroborated to some extent by Ferguson and the stenographer. There are also circumstances in the evidence which are favorable to his contention.

Appellant admitted that appellee agreed to pay him one half of the profits, but says that his promise to do so was voluntary, and that he paid no attention to it. The testimony of other witnesses as to statements and declarations made by appellant as to his interest in the land is also conflicting.

Upon the whole record, we reach the conclusion that the alleged partnership arrangement is sustained by the evidence. Appellant regained his homestead, and secured the payment of his debts. It is a matter of common knowledge that land prices were high and still advancing in 1919, and, as expressed by Ferguson, both parties talked as though they were expecting to realize a profit from the sale of the land.

The remaining question for consideration involves the order of the court directing appellee to pay $1,175, with interest thereon, the amount found to be due appellant, to the clerk of the district court, to be held by him pending the settlement of the partnership accounts growing out of the purchase of the Ringgold County farm. Appellee attached to his answer and cross-petition an itemized statement of "assets" and "liabilities" of the partnership. Among the assets he lists the farm at $65 per acre, or a total value of $8,125; also an item of $748.02, representing one year's rent paid by appellant, with 8 per cent interest thereon, according to the agreement between the partners. Deducting the total assets from the total liabilities, and allowing appellant credit for $1,175, together with $105.29 interest thereon, the statement shows a balance due appellee of $160.29. The court made no accounting of the partnership, nor did it adjudicate any of the items in the partnership account. It appears, however, from the abstract that a supplemental decree was,

upon the motion of appellee, entered, appointing a receiver to take charge of the partnership assets and sell the land. No appeal was taken by appellant from the supplemental decree. The court filed a written opinion, from which it appears that the ground upon which appellee was directed to pay to the clerk the money due appellant, instead of directly to him, was that the appellant is insolvent. It had not, at the time of the rendition of the decree, been determined whether the partnership venture will result in a profit, or whether the same will be attended with losses. The land has not been appraised, and no satisfactory evidence was offered of its value. Appellee's statement merely assumes the value of the farm to be $65 per acre. The transactions which resulted in appellant's commencing an action against appellee bear no relation whatever to the partnership. The right of appellant to recover the amount due him from appellee in no sense depended upon the partnership affairs or upon the possibility of losses which might result in making appellant a debtor to appellee. None of the items involved in the partnership were settled or adjusted, and no one could tell what the losses, if any, would be. Appellant owed appellee nothing. It. was the agreement that appellee would furnish the money to finance the partnership, and, when the land was sold, the profits and losses were to be shared equally. Little evidence was introduced to show that appellant is insolvent. It is true that the only real estate owned by him is his homestead, but it is not shown that he has any unpaid obligations, or that he may not be able to pay his share, if any, of the partnership liabilities.

The authority of the court to make the order directing appellee to pay the money to the clerk is also challenged. Appellee disregards this contention in his brief and argument, and we are furnished with no authorities to sustain the court's action. Appellee had no lien of any kind upon the funds, and the record does not show that appellant was indebted to him in any amount. At best, it shows a mere possibility that the partnership assets will not be sufficient to discharge its liabilities. Our statute makes no provision for the sequestration of funds held by one party and belonging to another, under the circumstances shown. Indeed, we have no statute at all on the subject. *Bitzer v. Washburn*, 121 Iowa 462.

The order of the court cannot be sustained. It should have directed appellee to pay to the appellant the amount found to be due him. The decree of the court should, therefore, be modified to that extent. For this purpose, the cause will be remanded to the court below, with directions to enter a decree in harmony herewith.—*Modified and affirmed.*

ARTHUR, C. J., DE GRAFF and VERMILION, JJ., concur.