JOSEPH H. ADLER, LEWIS SCHIFF, SOLOMON ADLER, AND LOBE RINDSKOFF, PLAINTIFFS IN ERROR, *v.* AARON D. FENTON, OLIVER H. LEE, WILLIAM H. DAVIS, AND MERRIT T. COLE.

Where a creditor, whose debt was not yet due at the time of bringing the action.

brought a suit against his debtors and two other persons, for a conspiracy to enable the debtors to dispose of their property fraudulently so as to hinder and defeat the creditors in the collection of their lawful demands, the action will not lie.

The debtors were the lawful owners of the property at the time the suit was commenced. They had the legal right to use and enjoy it to the exclusion of others, and no one had any right to interfere with their use or disposition; none, unless there be a right conferred by the law upon a creditor to prevent the accomplishment of fraud by his debtor, and to pursue him, and others assisting him, for a revocation of acts done to hinder, delay, or defraud him, in the collection of his demands.

The authorities examined to show that this cannot be done.

In this case, the creditor, by suing and levying an attachment upon the property of the debtor for such parts of the debt as had then become due, had waived the alleged fraud in the contract of sale and confirmed the sale.

THIS case was brought up by writ of error from the District Court of the United States for the district of Wisconsin.

The facts are stated in the opinion of the court.

It was argued by *Mr. Doolittle* for the plaintiffs in error, upon which side there was also a brief filed by *Mr. Brown*, and by *Mr. Lynde* for the defendants.

The points made by the counsel on both sides were so connected with the special circumstances of the case, that the effort to explain them to the reader would be fruitless without a long narrative.

Mr. Justice CAMPBELL delivered the opinion of the court.

This action was instituted by the defendants in error in the District Court, as creditors of two of the plaintiffs in error, Adler and Schiff, upon the complaint, that this firm had combined and conspired with their co-defendants in the court below, to dispose of their property fraudulently, so as to hinder and defeat their creditors in the collection of their lawful demands. By means of which fraudulent acts, they affirm they suffered vexation and expense, and finally incurred the loss of their debt.

The defendants pleaded the general issue. Upon the trial,

the plaintiffs proved that Adler and Schiff were traders in Milwaukie, and to carry on their business, in August, 1857, purchased of the plaintiffs, and other merchants in New York, upon credit, a large quantity of merchandise, which, with their other property, shortly after its delivery at Milwaukie, was assigned to one of their co-defendants, for the ostensible purpose of paying their debts, but really with the purpose of more effectually concealing it from the pursuit of their creditors.

There was testimony conducing to convict all the defendants of a common design to accomplish this purpose. The plaintiffs had extended a credit to Adler and Schiff of two, four, and six months. They caused an attachment to issue against this firm upon all their debt which had become due at the time these transactions occurred, which was levied upon sufficient property to satisfy it, and afterwards, and before the maturity of their remaining demand, this suit was commenced. At the time of the trial, this demand was their only claim against Adler and Schiff.

The defendants requested the court to instruct the jury, " that a creditor at large, as such, has no legal interest in the goods of his debtor, and cannot maintain an action for any damages done to such property ; and that if the defendants had been guilty of a conspiracy to remove the property of a debtor, and thereby to defraud his creditors, a creditor at large, not having a present right of action against such debtor, has not such an interest in the subject of the fraud as to enable him to maintain an action for damages against the defendants, and that the declaration discloses no cause of action against the defendants." The court declined to give this instruction, but charged the jury " that the plaintiffs sold their goods to Adler and Schiff on credit; they had no interest in the goods sold, or in the other property of these defendants, but an interest in the debt owing for the goods so sold on credit. And if the defendants have been guilty of a conspiracy to remove the property of Adler and Schiff, and they did so remove their property with intent to defraud the plaintiffs in the collection of their debt when it should become payable, even though it was not payable when such removal was effected, the plaintiffs have

a cause of action after the debt became payable." To enable the plaintiffs to sustain an action on the case like the present, it must be shown that the defendants have done some wrong, that is, have violated some right of theirs, and that damage has resulted as a direct and proximate consequence from the commission of that wrong. The action cannot be sustained, because there has been a conspiracy or combination to do injurious acts. In Savile *v.* Roberts, 1 Lord R., 374, Lord Holt said, "it was objected at the bar against these old cases, that they were grounded upon a conspiracy, which is of an odious nature, and therefore sufficient ground for an action by itself. But to this objection he answered, that conspiracy is not the ground of these actions, but the damages done to the party; for an action will not lie for the greatest conspiracy imaginable, if nothing be put in execution." There are cases of injurious acts for which a suit will not lie, unless there be fraud or malice concurring to characterize and distinguish them. But in these cases the act must be tortious, and there must be consequent damage. An act legal in itself, and violating no right, cannot be made actionable on account of the motive which superinduced it. It is the province of ethics to consider of actions in their relation to motives, but jurisprudence deals with actions in their relation to law, and for the most part independently of the motive. In Hutchins *v.* Hutchins, 7 Hill. N. Y. R., 104, the defendants had successfully conspired to induce a testator by fraudulent representations to alter a will he had made in favor of the plaintiff.

The court said, "for injuries to health, liberty, and reputation, or to rights of property, personal or real, the law has furnished appropriate remedies. The former are violations of the absolute rights of the person, from which damage results as a legal consequence. As to the latter, the party aggrieved must not only establish, that the alleged tort or trespass has been committed, but must aver and prove his right or interest in the property or thing affected, before he can be deemed to have sustained damages for which an action will lie." And because the plaintiff had a mere possibility of benefit, and was deprived only of hopes and expectations, it was decided

that the action in that case would not lie. In Stevenson *v.*
Newnham, 13 C. B. R., 285, it was determined, that when the
act complained of is not unlawful *per se*, the characterizing it
as malicious and wrongful will not be sufficient to sustain the
action. In the present suit, the plaintiffs do not allege that
they were defrauded in the contract of sale of their merchan-
dise, although there is abundant testimony to show that the
purchases were made by Adler and Schiff, with the intention of
defrauding their vendors. But the plaintiffs, by electing to
sue for the price, have waived that fraud, and confirmed the
sale. Adler and Schiff were the lawful owners of the property
at the time this suit was commenced. They had the legal
right to use and enjoy it to the exclusion of others, and no
one had any right to interfere with their use or disposition;
none, unless there be a right conferred by the law upon a
creditor to prevent the accomplishment of fraud by his debtor,
and to pursue him, and others assisting him, for a revocation
of acts done to hinder, delay, or defraud him, in the collection
of his demand.

The authorities are clear, that chancery will not interfere to
prevent an insolvent debtor from alienating his property to
avoid an existing or prospective debt, even when there is a
suit pending to establish it. In Moran *v.* Dawes, Hopkins's
Ch. R., 365, the court says: "Our laws determine with accu-
racy the time and manner in which the property of a debtor
ceases to be subject to his disposition, and becomes subject to
the rights of his creditor. A creditor acquires a lien upon the
lands of his debtor by a judgment; and upon the personal
goods of the debtor, by the delivery of an execution to, the
sheriff. It is only by these liens that a creditor has any vested
or specific right in the property of his debtor. Before these
liens are acquired, the debtor has full dominion over his prop-
erty; he may convert one species of property into another,
and he may alienate to a purchaser. The rights of the debtor,
and those of a creditor, are thus defined by positive rules;
and the points at which the power of the debtor ceases, and
the right of the creditor commences, are clearly established.
These regulations cannot be contravened or varied by any in-

terposition of equity. There are cases in which the violation of the rights of a creditor within these limits has formed the subject of an action at law against third persons. Smith *v.* Tonstall, Carth., 3; Penrose *v.* Mitchell, 8 S. and R., 522; Kelsy *v.* Murphy, 26 Pen. R., 78; Yates *v.* Joyce, 11 John., 136. But the analogies of the law, and the doctrine of adjudged cases, will not allow of an extension by the courts of the remedy employed in those cases in favor of a general creditor. This subject was discussed much at large in Lamb *v.* Stone, 11 Pick., 527.

"The plaintiff complained of the fraud of the defendant in purchasing the property of his absconding debtor, in order to aid and abet him in the fraudulent purpose of evading the payment of his debt. The court ask, what damage has the plaintiff sustained by the transfer of his debtor's property? He has lost no lien; for he had none. No attachment has been defeated; for none had been made. He has not lost the custody of his debtor's body; for he had not arrested him. He has not been prevented from attaching the property, or arresting the body of his debtor; for he had never procured any writ of attachment against him. He has lost no claim upon, or interest in the property; for he never acquired either. The most that can be said is, that he intended to attach the property, and the wrongful act of the defendant has prevented him from executing this intention. \* \* \* On the whole, it does not appear that the tort of the defendant caused any damage to the plaintiff. But even if so, yet it is too remote, indefinite, and contingent, to be the ground of an action." The same court reaffirmed this doctrine in Wellington *v.* Small, 3 Cushing R., 146.

Unquestionably, the claims of morality and justice, as well as the legitimate interests of creditors, require there should be protection against those acts of an insolvent or dishonest debtor that are contrary to the prescriptions of law, and are unfaithful and injurious. But the Legislature must determine upon the remedies appropriate for this end; and the difficulty of the subject is evinced by the diversity in the systems of different States for adjusting the relations of creditor and

debtor, consistently with equity and humanity. Bankrupt and insolvent laws, laws allowing of attachment and sequestration of the debtor's estate, and for the revocation of fraudulent conveyances, creditors' bills, and criminal prosecutions for fraud or conspiracy, are some of the modes that have been adopted for the purpose. In the absence of special legislation, we may safely affirm, that a general creditor cannot bring an action on the case against his debtor, or against those combining and colluding with him to make dispositions of his property, although the object of those dispositions be to hinder, delay, and defraud creditors. The charge of the district judge is erroneous, and the judgment of that court is reversed, and the cause remanded for further proceedings.