## FINDLAY *v.* McALLISTER & Others.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF MISSOURI.

Submitted December 2, 1884.—Decided January 12, 1885.

The confederating together of divers persons with a purpose of preventing the levy of a county tax, levied in obedience to a writ of mandamus, in order to pay a judgment recovered against the county upon its bonds; and the prevention of the sale of property seized under the levy by threats, menaces, and hostile acts, which deterred persons from bidding for the property levied on, and intimidated tax-payers and influenced them not to pay the tax, whereby the judgment creditor was injured to the amount of his judgment, constitute good cause of action in his favor against the parties so conspiring.

The plaintiff in error was the plaintiff in the Circuit Court. He brought his suit against Thomas McAllister and fourteen other defendants to recover damages upon a cause of action, which was stated in his petition substantially as follows: The plaintiff, being the holder and owner of certain bonds issued by the County of Scotland, in the State of Missouri, and of certain interest coupons detached therefrom, recovered, on September 25, 1877, in the same Circuit Court in which the present action was brought, a judgment on his coupons against the county for the sum of $4,008.86. The county failing to pay the judgment, the Circuit Court issued a peremptory writ of mandamus commanding the County Court of Scotland County to levy and cause to be collected a special tax upon all the taxable property within the county, sufficient to pay the judgment, with the interest thereon and costs. At the same time writs of mandamus were issued by the same Circuit Court, directing the same

County Court to levy similar special taxes to pay various other judgments rendered against the county, upon like demands, in favor of several other plaintiffs. In obedience to these writs the County Court levied a special tax, denominated "judgment tax," sufficient to pay off all the judgments, and caused the same to be placed on the tax books of the county, and the tax books to be delivered to the collector of the county for the collection of the tax. A part of this tax so levied was levied in obedience to the writ of mandamus in the case of this plaintiff against the county, and for the purpose of raising money to pay off his judgment. "Wherefore the plaintiff," the petition averred, "had a vested right and interest in said special tax to the amount of his judgment, interest and costs."

After the special tax had been levied, and the tax book placed in the hands of the collector for collection, the defendants, with about two thousand other evil-disposed persons, residents of Scotland County, for the purpose of depreciating the value of the bonds held by the plaintiff, and thereby inducing and compelling him to compromise his judgment and bonds at much less than their value, did unlawfully and maliciously, and in contempt of the orders and mandates of the Circuit Court, combine and conspire to hinder and prevent the County Court and the collector, from performing the things required by the mandate of the Circuit Court, to wit, the collection and payment of the special tax.

To this end the defendants and their confederates organized themselves into an association called "The Tax-payers' Association of Scotland County," with branch organizations in various school districts of the county, for the purpose, among other things, of resisting the collection of the special tax, and the defendants and their confederates did pledge themselves to contribute of their means and influence, and to protect each other in all efforts made to resist the payment thereof.

In furtherance of their design, the defendants and their confederates, members of said association, made and published threats of violence against the attorneys of the plaintiff, who were employed to represent him in the collection of his judgment; and gave out and circulated the threat that no person

would be allowed to bid upon, or purchase any property that might be offered for sale by the collector to enforce the payment of the special tax, intending thereby to intimidate any person from bidding upon or purchasing any property offered for sale by the collector for the payment thereof.

To induce the tax-payers of the county to join the association and aid in carrying out their unlawful conspiracy, the defend-ants and their confederates falsely and fraudulently gave out and published, that such bonds and special tax were illegal, null and void, and that they were under no obligation, legal or moral, to pay the same, well knowing that such declarations were false.

During the month of February, 1878, the collector of the county, for the purpose of collecting the special tax, levied upon a large number of horses and mules, and advertised them to be sold on February 28, 1878, at Memphis, in said county of Scotland; whereupon the defendants and their confederates, in order to prevent the sale of the property so levied on, and prevent the payment of plaintiff's judgment, and so to harass and wrong him as to induce him to compromise his judgment and bonds at much less than their value, assembled in vast numbers at the time and place advertised for the sale, and, by their combined influence, threats and hostile demonstrations, did so overawe and intimidate the persons who had gone to the place of sale, for the purpose of and with intent to bid on the property, as to prevent them from bidding when the same was offered for sale; and, by reason of such combined influence, threats and menaces, the defendants and their confederates, members of said association, acting under its orders, did prevent any person from bidding on the property when so offered for sale, and did prevent it from being sold.

The unlawful combination and conspiracy of the defendants, to injure and defraud the plaintiff, and prevent the collection of his judgment, still exists; and, by reason of the combined influence, threats, menaces and hostile demonstrations of the defendants, the tax-payers of Scotland County are overawed and intimidated, and so influenced that they do not pay the special tax, nor has the collector, by reason of said combination

and association, been able to collect the same. The plaintiff, by reason of the premises, has been damaged to the amount of his judgment, to wit, $4,008.86, with interest thereon from September 25, 1877, and costs; for which, with $3,000 exemplary damages, he demands judgment against the defendants.

The defendants demurred to the petition. In support of their demurrer they assigned and argued, both in the Circuit Court and this court, the following grounds:

1. That the plaintiff had no such legal property interest in the taxes in question as to entitle him to maintain actions for conspiracy.

2. That he had sustained no legal damages by the alleged acts of the defendants.

The court sustained the demurrer, and rendered a judgment for the defendants, to reverse which the plaintiff brought this writ of error.

*Mr. A. J. Baker* and *Mr. F. T. Hughes,* for plaintiff in error.

*Mr. H. A. Cunningham* and *Mr. James O. Broadhead,* for defendants in error.—There are two main propositions, either one of which ought to conclusively determine this case in favor of the defendants. 1. The plaintiff has no such legal property interest in the taxes in question as to entitle him to maintain actions for conspiracy. 2. The plaintiff has sustained no legal damages by the alleged acts of the defendants. These propositions will be considered together. The judgments are against the county, an artificial person. Individual tax-payers are not liable, nor are the judgments liens on their property. The responsibility of tax-payers is to the tax officers, not to creditors of the county to whom the money may or may not go when collected. True, when the law says that taxes may be levied by certain officers, as county courts, to pay certain debts, and collected by certain county collectors, the courts may by mandamus compel those officers to proceed to the performance of their duties, but this in nowise enlarges the

scope of their official powers. The courts can only command them to proceed according to the law defining their duties. See *Rees* v. *Watertown*, 19 Wall. 107; *Heine* v. *Levee Commissioners*, 17 Wall. 655; *Barkley* v. *Levee Commissioners*, 93 U. S. 258. Mandamus is the remedy against an officer in such case, simply because there is no other. But mandamus will not lie against the tax-payer to compel him to pay the tax. That is a question between him and the collector. There is no relation between the tax-payer and the plaintiff which warrants an action for conspiracy. No action lies for a simple conspiracy to do an unlawful act. The act itself and the resulting damage are the only grounds of action. *Kimbal* v. *Harmon*, 34 Maryland, 401, 407; *Adler* v. *Fenton*, 24 How. 408 is much in point. See *Saville* v. *Roberts*, 1 Ld. Raymond, 374; *Hutchins* v. *Hutchins*, 7 N. Y. 104; *Lamb* v. *Stone*, 11 Pick. 527; *Wellington* v. *Small*, 3 Cush. 145; *Smith* v. *Blake*, 1 Day, 258; *Barnet* v. *Davidson*, 10 Ired. 94; *Green* v. *Kimble*, 6 Blackford, 552; *Cowles* v. *Day*, 30 Conn. 406, 410. In an action for conspiracy to injure, the damage, and not the conspiracy, is the gist of the action. *Laverty* v. *Van Arsdale*, 65 Penn. St. 507; *Parker* v. *Huntingdon*, 2 Gray, 124; *Jones* v. *Baker*, 7 Cowen, 445; *Hutchins* v. *Hutchins*, 7 Hill, 104; specially *Adler* v. *Fenton*, 24 How. 408. If the plaintiff may have redress by any of the forms of action now known or practised it would be unwise and unsafe to sanction an untried one, the practical operation of which cannot be foreseen. *Lamb* v. *Stone*, cited above; *Randall* v. *Hazelton*, 12 Allen, 412; *Anthony* v. *Slaid*, 11 Metcalf, 290 (Shaw, Ch. J.). These taxes can only be collected in the manner and by the officers designated by law, and this court cannot indirectly collect them. The plaintiff's judgment against the county remains unaffected, with full right to enforce it in a legal way. The tax-payers, not being debtors of the plaintiff, these actions will not lie.

MR. JUSTICE WOODS delivered the opinion of the court. He recited the facts in the foregoing language, and continued:

The facts stated in the petition are admitted by the demurrer, and, for the present consideration of the case, must be taken as

true.   The statutes of Missouri, which were in force when the
bonds mentioned in the petition were issued, and which still
remain in force, provide as follows : There shall be a collector
of revenue for every county, who shall give bond conditioned
that he will faithfully and punctually collect and pay over all
State, county and other revenue for the two years next ensu-
ing the first day of March thereafter.   After the tax book for
the year has been corrected, and the amount of the county tax
stated therein, the County Court shall cause the same to be de-
livered to the collector, and he shall be charged with the whole
amount of the tax book so delivered to him.   The collector
shall diligently endeavor and use all lawful means to collect
the taxes which he is required to collect in his county.   After
the first day of October he shall have power to seize and sell
the goods and chattels of any person liable for taxes, in the
same manner as goods and chattels are or may be required to
be seized and sold under executions issued in judgments at law ;
and no property shall be exempt from seizure and sale for
taxes due on lands and personal property.   The collector, hav-
ing made settlement according to law of the revenue collected
by him, shall pay the amount found due into the county treasury.

When a demand against a county is presented to the County
Court, the court shall ascertain the amount due and order it to
be paid out of the particular fund—designating it—applicable
to the payment of such demand, and order their clerk to issue
a warrant therefor on the treasurer of the county, which shall
designate the particular fund out of which the same is to be
paid.

The treasurer of the county is required to make an entry in
a book to be kept by him of all warrants for money lawfully
drawn by the County Court presented to him for payment;
and all warrants so presented shall be paid out of the funds
mentioned in such warrants, and in the order in which they shall
be presented for payment.   See sections 5370, 5394, 6733,
6754, 6774, 6821, 6822, Revised Statutes of Missouri of 1879.

The question presented by the demurrer to the petition is
not one of the measure of damages.   If the plaintiff has sus-
tained any substantial injury by reason of the wrongful acts of

the defendants set out in the petition, for which he is entitled
to his action against them, the demurrer to the petition should
have been overruled.

It is evident from the provisions of the statutes of Missouri,
whose substance has been given, that the money received by
the collector of Scotland County in payment of the special tax
ordered by the County Court to be collected for the payment
of the judgment of the plaintiff and other judgment creditors,
would, when collected, constitute a separate fund in the county
treasury, applicable to this purpose. If the special tax had
been collected, the plaintiff would have had such an interest
therein that a court of equity would at his instance enjoin its
diversion to any purpose save that for which it had been levied
and collected, and compel its payment to the satisfaction of the
judgment of the plaintiff. *Meriweather* v. *Garrett*, 102 U. S.
472, 514, 515 ; *Attorney-General* v. *Dublin*, 1 Bligh N. S. 312.
And see *Davies* v. *Corbin*, 112 U. S. 36. The use of the money
by the county, except for the payment of the judgments, which
the writ of mandamus had been issued to enforce, would have
been a clear contempt of the orders and process of the Circuit
Court, as well as a violation of the law of the State.

The writ of mandamus under which the collector, according
to the averments of the petition, was proceeding to collect the
money to pay the judgment of the plaintiff, was a substitute
for the writ of *fieri facias*, and was the only remedy by which
the plaintiff could enforce satisfaction. He had, therefore, as
clear an interest in the money to be raised by the special tax
for the payment of his judgment, as he would have had in the
money to be collected by the sheriff on execution if his judg-
ment had been against an individual. It would seem fairly to
follow that he had the same rights in the one case as in the
other, against those who, to prevent the satisfaction of his judg-
ment, unlawfully interfered with the officer in the discharge of
his duties.

It is plain that the injury of which the plaintiff complains is
not one common to himself and the public at large, as it would
have been had the defendants interfered to prevent the collec-
tion of the general taxes of the county. The alleged unlawful

acts of the defendants could injure only the plaintiff and the other judgment creditors of Scotland County, for whose benefit the special tax was levied. If there is any cause of action against the defendants, it belongs to the plaintiff and other judgment creditors individually, and the public has no share in it. The objection that the plaintiff is only injured in common with all the other members of the body politic, and has no separate and individual cause of action, cannot be successfully urged.

The right of a judgment creditor to proceed by action against those who rescue the person of his debtor arrested on mesne or final process, or interfere with the goods of his debtor so as to prevent a levy or sale by the sheriff to satisfy his judgment, is well recognized at common law.

Thus, in *Smith* v. *Tonstall*, Carthew, 3, 4, adjudged on demurrer in the King's Bench and affirmed in the House of Lords: A, a judgment creditor, sued B for procuring J. S., the judgment debtor, to confess a judgment in favor of one J. N., to whom he did not owe anything, and J. N. sued out execution on this feigned judgment by virtue of which he seized all the goods and chattels of J. S., which he esloined to places unknown and converted to his own use, by reason whereof the plaintiff lost his debt. Held, that the action lay.

In Comyns's Digest, under the head of Action on the Case for Misfeasance, A. 5, it is stated that an action will lie for rescue of a person arrested upon mesne or judicial process, citing 2 Cro. 419, 486; Cro. Car. 109; or of goods taken in execution. And the action lies by the party to the suit in which the arrest was, citing 2 Cro. 486; Cro. Car. 109; 2 Rolle's Ab. 556, pl. 14, 15.

Under the head of Rescous, D. 2, the same author says: "So, if a person arrested upon *mesne* process be rescued, an action upon the case lies against the rescuers by the plaintiff in the suit; for he has the loss and no remedy against the sheriff," referring to 2 Cro. 485–6, above cited, and also to 3 Bulst. 200.

In 2 Rolle's Ab. 556, pl. 14, 15, it is said: If a sergeant of London or bailiff of the counter take a man on a capias in process at my suit, and J. S. rescues him out of his pessession,

I may have a general writ of trespass against him, because the sergeant is, for this purpose, my servant as well as the King's, and because the taking out of the sergeant's possession, he being my servant, is a taking out of mine. Trin. 15, Jac. I., *Wheatley* v. *Stone*, adjudged on a writ of error at Sergeant's Inn. But I may have action in the case as well. Trin., Jac. I., *Speere* v. *Stone*, affirmed same time; *S. C.* Hobart, 180, *sub nom. Wheatley* v. *Stone.*

So in *Mynn* v. *Coughton*, Cro. Car. 109, cited in Bac. Ab., Execution O, it was held that, if a defendant be rescued after being taken on a *capias ad satisfaciendum*, the plaintiff may have an action for the misfeasance against the rescuers, for he is the party who hath the loss, and to whom the injury is done, and he ought not to be compelled to sue the sheriff, who may be dead, and if he recover, the rescuers may plead it if sued by the sheriff, so that there is no danger of being double-charged. 3 to 7. *S. C.* Hutton, 98, *sub nom. Congham's Case.*

In *May* v. *Sheriffs of Middlesex*, Cro. Jac. 419, which was an action on the case for escape on mesne process, it was held that rescue may be pleaded in bar, but not for escape on final process. On mesne process, the sheriff was not bound to take *posse comitatus*, and on rescues returned by sheriff on mesne process, process may be awarded against the rescuers, and an action on the case lies against them. *S. C.* 3 Bulst. 198–201, where a full argument by Coke and Doddridge is reported. The latter refers to Fitz. N. B. 102, to show that the party may sue rescuers.

*Hodges* v. *Marks*, Cro. Jac. 485, was an action on the case for rescuing plaintiff's debtor out of sheriff's possession after arrest on mesne process whereby the debtor escaped and went to places unknown. Held good, for the loss is the plaintiff's, as he cannot sue the sheriff; and therefore it is reason that he should have action against those who did the injury to him whereby he lost his process and his means to recover his debt. *S. P. Kent* v. *Elwis*, Cro. Jac. 241. See also 3 Bulst. 200; 5 Mod. 217; 2 T. R. 5, 126.

In *Bentley* v. *Donnelly*, 8 T. R. 127, which was an action by

plaintiff in primer action against rescuers of defendant after arrest on mesne process, the action was sustained.

These principles have been recognized by courts of high authority in this country.

In *Yates* v. *Joyce*, 11 Johns. 136, Yates, the assignee of a judgment against John Joyce, which was a lien on the property of the latter, was about to take out execution and seize a certain lot of land, and the defendant, G. Joyce, knowing this, pulled down and carried away certain buildings from off the land, whereby Yates was deprived of the benefit of his judgment. It was held that Yates might maintain an action on the case against G. Joyce for fraudulently removing the property of John Joyce and converting it to his own use, with intent to defeat the judgment of Yates. In giving judgment on a demurrer to the declaration, the court said: "It is obvious, from the statement of the plaintiff's case in the declaration, the truth of which is admitted by the demurrer, that he has sustained damage by the act of the defendant which, he alleges, was done fraudulently and with intent to injure him. It is the pride of the common law that, whenever it recognizes or creates a private right, it gives a remedy for the wilful violation of it. . . . It is a sound principle, that where the fraudulent misconduct of a party occasions injury to the private rights of another, he shall be responsible in damages for the same, and such is the case presented by the pleadings in this cause.

*Penrod* v. *Mitchell*, 8 S. & R. 522, was an action on the case in the nature of a writ of conspiracy for fraudulently withdrawing the goods of the defendant in an execution, from the reach of the plaintiff. It was not questioned that the action would lie. The court held that the measure of damages was the value of the goods thus withdrawn, and not the amount of the judgment on which the execution was issued. In *Mott* v. *Danforth*, 6 Watts, 304, it was held that a creditor, without judgment or execution, and even before his debt was due, might sue parties at law who conspire to defeat his right of collection by fraudulently concealing and converting the debtor's goods. See also, to the same effect, *Kelsey* v. *Murphy*, 26 Penn. St. 78. And see *Meredith* v. *Benning*, 1 Hen. & Munf. 585.

. The three cases last cited extend the rule further than the exigency of the present case requires, and further than this court has been disposed to go.

These authorities establish the right of a judgment creditor to his action against rescuers of the person or goods of the debtor, seized by the sheriff to satisfy the judgment, or against one who prevents the seizure of the debtor's goods on execution; and the principle on which they rest is directly in the face of the contention of the defendants in error, that the plaintiff has no legal interest in the taxes to be collected to pay his judgment, and has sustained no legal damages by the alleged acts of the defendants. We think they support the action in the present case.

Of the authorities cited by the counsel for the defendants in error in support of the demurrer, the principal case is *Adler* v. *Fenton*, 24 How. 407, where it was held that an action would not lie by a creditor, whose debt was not yet due, against his debtors and two others for a conspiracy carried into effect to enable the debtors fraudulently to dispose of their property, so as to hinder and defeat the creditor in the collection of his debt. Mr. Justice Campbell, who delivered the opinion, put the decision of the court on the ground that to sustain the action it must be shown not only that there was a conspiracy, but that there were tortious acts in furtherance of it and consequent damage; that Adler & Schiff, the judgment debtors, were the lawful owners of the property, and had the legal right to use and enjoy or sell it at their pleasure, and the plaintiffs, being general creditors, had no interest in or lien upon it. There was, therefore, no wrong of which the plaintiffs could complain.

In the other cases cited by the defendants* the plaintiff was merely a general creditor, and had no judgment, attachment, or lien, the enforcement of which was obstructed by the de-

---

* *Lamb* v. *Stone*, 11 Pick. 527 ; *Wellington* v. *Small*, 3 Cush. 145 ; *Smith* v. *Blake*, 1 Day, 258 ; *Burnet* v. *Davidson*, 10 Ired. 94 ; *Green* v. *Kimble*, 6 Blackf. 552 ; *Austin* v. *Barrows*, 41 Conn. 287 ; *Cowles* v. *Day*, 30 Conn. 406, 410 ; *Moody* v. *Burton*, 27 Maine, 427 ; and *Bradley* v. *Fuller*, 118 Mass. 239.

fendant, or the cases were otherwise inapplicable to the question in hand.

In the present case there was a conspiracy, tortious acts in furtherance of it, and consequent damage to the plaintiff. The property seized by the collector was in the custody of the law. The tax-payers, for whose unpaid taxes it had been seized, had no longer any right to its possession or use, and could not sell or otherwise dispose of it. It was devoted by the law to be sold to raise a fund to pay the plaintiff's judgment. The plaintiff had, therefore, an interest, which the law gave him, in the property and its sale, and suffered a direct damage from the alleged acts of the defendants by which a sale was prevented.

The plaintiff, according to the averments of his petition, had recovered his judgment against the county; and he had obtained his mandamus to the County Court directing it to levy and cause to be collected a special tax to pay the judgment. The collector of the county, in obedience to the orders of the County Court, which were themselves in obedience to the mandamus of the Circuit Court, was proceeding to collect the tax, and had levied on property to that end, and was about to sell it when the threats and hostile demonstrations of the defendants defeated the sale, and the petition averred the defendants continued to overawe and intimidate the tax-payers of the county, so that they did not pay the tax, and the collector had not been able, by reason thereof, to collect the tax.

The plaintiff cannot sue the collector, for he has done his duty, and no suit lies against him. Unless the plaintiff has a cause of action against the defendants, he is without remedy. To hold that the facts of this case do not give a cause of action against them would be to decide that a citizen might be subjected to a wilful and malicious injury at the hands of private persons without redress; that an organized band of conspirators could, without subjecting themselves to any liability, fraudulently and maliciously obstruct and defeat the process of the courts, issued for the satisfaction of the judgment of a private suitor, and thus render the judgment nugatory and worthless. Such a conclusion would be contrary to the principles of the common law and of right and justice.

It is no answer to the case made by the petition to say, as the defendants, by their counsel do, that the judgment of the plaintiff is still in force and bearing interest, and the liability of the county still remains undisturbed. What is a judgment worth that cannot be enforced? The gravamen of the plaintiff's complaint is that the defendants have obstructed, and continue to obstruct, the collection of his judgment, and he avers that he has been damaged thereby to the amount of his judgment and interest; in other words, that by reason of the unlawful and malicious conduct of the defendants, his judgment has been rendered worthless. To reply to this that the judgment still remains in force on the records of the court is an inadequate answer to the plaintiff's cause of action.

It follows from the views we have expressed that the Circuit Court erred in sustaining the demurrer to the petition.

*Judgment reversed, and the cause remanded for further proceedings in conformity with this opinion.*

MR. JUSTICE MILLER and MR. JUSTICE FIELD dissented.