## M. J. FERNANDEZ, Appellant, v. CHARLES LAMOTHE et al., Respondents.

St. Louis Court of Appeals, April 5, 1910.

1. **FRAUDULENT CONVEYANCES:** Creditor at Large: Suit Against Persons Aiding Debtor: Action Will Not Lie, when. The current of decision is adverse to allowing an action against parties who have assisted a debtor in shuffling his property to defeat an execution, in favor of creditors at large, or perhaps any creditor, save one who holds a judgment lien or other lien on the property fraudulently disposed of by conveyance, removal or otherwise.

2. ———: ———: ———: Pleading. In her petition, plaintiff Against Persons Aiding Debtor: Action Will Not Lie, When. plaintiff was to sell defendant's interest in a tract of timber; that she secured the other defendants as purchasers of the property and that a contract was made under which the property was to be transferred to said other defendants, and that her commission was a stated amount, which had never been paid; that subsequently all of the defendants conspired to cheat plaintiff out of her commission and rescinded the contract made by them and formed a corporation, to which defendant LaMothe transferred his property, in pursuance of said conspiracy and with the fraudulent purpose to enable said defendant LaMothe to conceal or dispose of his property and thus hinder, delay and prevent plaintiff from collecting her just demands against him. Plaintiff asked judgment against defendants for the amount of her commission. *Held*, that the petition contains two distinct causes of action, one against only part of the defendants, and the other against all of them, which is forbidden by section 593, Revised Statutes 1899, although sometimes allowed in equity; that it fails to state a cause of action for a violation of section 1931, Revised Stat-

utes 1899, if an action would lie on that section, as it is not alleged any of the defendants put in use the transfer by defendant LaMothe to the company as having been made in good faith; and that as no judgment was asked against defendant LaMothe for the debt he is said to owe, a demurrer to the petition should be sustained.

Appeal from St. Louis City Circuit Court.—*Hon. Geo. H. Williams*, Judge.

AFFIRMED.

*Julian Laughlin* for appellant.

(1) The petition states a cause of action against the defendant LaMothe, and the damage is a definite sum, $2632. (2) When the plaintiff has a well defined cause of action against one of the defendants, she may join with LaMothe anyone who knowingly and wrongfully aided and assisted LaMothe in accomplishing the act which caused the damage to plaintiff. (3) The act complained of is forbidden by the laws of Missouri, and is an unlawful act. Sec. 1931, R. S. 1899. (4) "A conspiracy to do an illegal thing is actionable, if injury proceed from it." Halderman v. Martin, 10 Barr, 372. (5) "In a civil action on the case for conspiracy, the gist of the action is the damage which the plaintiff has sustained by the acts of the defendants, and the allegation of a conspiracy need not be proved." Hunt v. Simonds, 19 Mo. 588; Holborn v. Naughton, 60 Mo. App. 101. (6) "Fraudulent collusion may be inferred from facts and circumstances not consistent with an honest purpose." Schultz v. Christman, 9 Mo. App. 588. "Persons conspiring together by their false and fraudulent representations, causing lands to be sold at a sacrifice, will be liable in damages for the injury done." Wickersham v. Johnson, 51 Mo. 313.

*Jos. Barton* for respondents.

(1) Appellant's amended petition is fatally defective. This is apparent upon its face. To declare that certain acts constitute and actionable conspiracy, is not sufficient. (2) This is an action on the case for damages, alleged to have been occasioned by an unlawful conspiracy. In a criminal sense, the gist of the offense lies in the unlawful combination to do an unlawful act, regardless of whether the particular act was accomplished or not. In the civil sense, the conspiracy or combination is nothing, so far as sustaining the action goes, and the allegation that a conspiracy was formed, need not be proved. The gist of the action is the damage alleged to have been done to the plaintiff. 6 Am. and Eng. Ency. Law, 872, 873, 874; Hutchins v. Hutchins, 7 Hill (N. Y.) 107; Wellington v. Small, 3 Cush. (Mass.) 145; Doremus v. Hennessy, 62 Ill. App. 391. Appellant, therefore, does not state a case by merely alleging that there was a conspiracy or combination to do an injurious act. Adler v. Fenton, 24 How. (U. S.) 407.

STATEMENT.—Final judgment was rendered upon a demurrer to the petition which we transcribe:

"Now comes the plaintiff in the above entitled cause, and, by leave of court first had and contained, files this her amended petition and states that she is engaged in the business or occupation of selling timber lands for others on commission; that on or about the 10th day of October, 1907, she was employed by the defendant, Charles L. LaMothe, to sell, trade or exchange his interest in a timber lease on a tract of about 4700 acres of growing timber or timber stumpage in Pemiscot county, Missouri, giving her exclusive handling of said tract, being parts or all of sections 1, 2, 3, 4, 9, 10, 11, 15, 33, 34 and 35 in township 19 north, ranges 11 and 12 east, known as the 'Byrd & McComb

Lands,' including a sawmill and all machinery used in connection with the same; that defendant, Charles L. LaMothe, agreed to pay plaintiff as commission for making such sale, trade or exchange, the sum of $2623, which was the agreed price of 56 cents per acre on the entire tract of 4700 acres; that agreeable to such employment, plaintiff advertised said property and corresponded with others and found customers in Allegheny and Pittsburg, Pennsylvania, in the persons of defendants A. F. Schwerd and Hugh Murphy, who were willing to exchange Allegheny county real estate owned by them for the property of said defendant LaMothe above described; that said defendants Schwerd and Murphy, after an examination of the timber and mill of said defendant LaMothe were satisfied with the same, and on or about the 10th day of June, 1908, the defendant LaMothe and his co-defendants, Murphy and Schwerd, entered into a written contract, whereby said LaMothe agreed to exchange the property above described for 54 lots of ground in the county of Allegheny, Pennsylvania, owned by said Schwerd and Murphy, the value of the property to be transferred by each of the respective parties being agreed upon as $40,000. That on the execution of said contract as aforesaid, plaintiff's work was completed, and the said defendant, Charles L. LaMothe, became indebted to plaintiff in the said sum of $2632, as commissions for her services in effecting such exchange, and that no part of the same has been paid to plaintiff, though often demanded.

"Plaintiff further states that thereafter said defendant Charles L. LaMothe, entered into an agreement, combination and conspiracy with his co-defendants, Hugh Murphy and A. F. Schwerd, for the sole purpose of cheating and defrauding the plaintiff out of said commissions so earned as aforesaid by her from said Charles L. LaMothe, and in pursuance of said agreement, combination and conspiracy and with

full knowledge of all the facts and with the sole purpose of cheating and defrauding the plaintiff, said defendants agreed among themselves to rescind or abandon said written contract above described, and did rescind, abandon and hold for naught said written contract, and did, thereupon, in pursuance of said conspiracy, combination and agreement and for the further fraudulent purpose of enabling the said Charles L. LaMothe to speedily and easily conceal or dispose of his property and effects and thus hinder, delay and prevent the plaintiff from collecting her just demands against him, said defendants did, on the——day of——, 1908, cause all the right, title and interest of the said Charles L. LaMothe in and to said timber and sawmill, etc., to be transferred to the defendant, Wardell Land & Lumber Company, which had been formed and incorporated under the laws of the State of Missouri by said defendants, LaMothe, Schwerd and Murphy; that said Wardell Land & Lumber Company was organized and incorporated for the sole purpose of aiding said defendant Charles L. LaMothe, to conceal his property and assets and prevent the realization of any judgment the plaintiff might obtain against him. And in pursuance of said purpose said defendant Charles L. LaMothe, has been enabled to and has disposed of his interest in said company, or all except a nominal portion thereof, and although the property owned by the said Charles L. LaMothe, who was at the time of the execution of the written contract for exchange hereinbefore mentioned, seized and possessed of tangible assets subject to execution of not less than $40,000 in value, yet, by reason of the wrongful and fraudulent acts above complained of and by reason of the assistance, aid, connivance and procurement of his co-defendants, Schwerd and Murphy, in pursuance of said unlawful agreement, combination and conspiracy, as above set forth, said Charles L. LaMothe, has secreted, concealed and disposed of all his

said property, for the purpose of cheating and de-
frauding this plaintiff and rendering valueless any
judgment which she might obtain against him, to plain-
tiff's damage in the sum of $2632. Wherefore plaintiff
asks judgment against said defendants in the said sum
of $2632, with interest thereon from said 10th day of
June, 1908, and for costs."

GOODE, J. (after stating the facts).—Appellant
appears in the petition as a creditor at large of defend-
ant LaMothe without either a judgment against said de-
fendant or a lien on his property. Cases are in the
books, mostly in the Pennsylvania Reports, wherein ac-
tions by such creditors against parties alleged to have
assisted debtors in shuffling their property to defeat
executions, were sustained. [Mott v. Danforth, 6
Watts 304; Penrod v. Mitchell, 8 Sarg. & Rawl. 522;
Kelsey v. Murphy, 26 Pa. St. 78; Merchants', etc., Bank
v. Tinker, 158 Pa. St. 17; Meredith v. Benning, 1 Hen.
& Munf. (Va.) *585.] In these cases usually a con-
spiracy is alleged between the debtors and the parties
who assisted him in the fraudulent scheme, but the gist
of the cause of action is the damage to the creditors by
the fraudulent transfer or concealment of the property,
and not the conspiracy. [1 Cooley, Torts (3 Ed.), 210.]
The current of decision runs against allowing the rem-
edy to creditors at large, or perhaps to any creditor
save one who holds a judgment lien or other lien on
the property fraudulently disposed of by conveyance,
removal or otherwise. [Adler v. Fenton, 24 How. 407;
Findlay v. McAllister, 113 U. S. 104; Field v. Siegal,
99 Wis. 605; annotated 47 L. R. A. 433; Lamb v. Stone,
11 Pick. 527; Gardner v. Sherrod, 9 N. C. 173, and
many other cases cited in said note to Field v. Siegal;
6 Ency. Law (2 Ed.), 878, 8 Cyc. 648.] It is certain
judicial authority preponderates in favor of withhold-
ing the remedy where there is neither a judgment es-
tablishing the demand, nor a lien on the debtor's prop-

erty. In most of the opinions denying the remedy
where there is no judgment or subsisting lien in favor
of the creditor, the courts have proceeded on the the-
ory that the conspiracy and fraudulent acts done to
make it effectual are so remotely related to the dam-
ages alleged to have followed as to render it unsafe for
the law to accept such conduct as a basis of recovery.
[Bump, Fraudulent Conveyances (4 Ed.), sec. 528;
Tasker v. Moss, 82 Ind. 63; Lamb v. Stone, supra.]
This reasoning is vague, but understood in connection
with the facts of the cases where it has been adopted,
it seems to mean the courts think damages might be
recovered though, in the nature of things, it is impos-
sible to prove with requisite certainty the creditor
would have been able to collect his alleged demand
from the property fraudulently disposed of if there
had been no such disposition of it, or that he was pre-
vented by the fraud from reaching the property of the
debtor sufficient to satisfy his claim. Another argu-
ment is the one adverted to in Lamb v. Stone, based
on the practical inconvenience of the remedy and the
chance of its working injustice to other creditors of
the debtor than the one who files the first action. It
is said the creditor who first proceeds against the par-
ties supposed to have assisted the debtor in a scheme
to defraud his creditors would have done nothing to
entitle him to priority, if, perchance, the property con-
veyed was not more than enough to satisfy his de-
mand, and yet there would be no method of appor-
tioning its value among other creditors. We appre-
ciate more the inconvenience of trying in such an ac-
tion the validity of the creditor's demand against the
debtor, a question in which the parties alleged to have
conspired with the latter would have only a contingent
interest, and trying, too, the question of a fraudulent
transfer in which all the defendants would be directly
interested. Closely scrutinized the petitions in this
case and others like it contain two distinct causes of

action, the first of which is against only part of the
defendants and the second against them all; a form
of pleading forbidden by the code, but sometimes al-
lowed in suits in equity. [R. S. 1899, section 593, and
cases cited, p. 621, 1 Mo. Ann. Stat.]

So much for the case attempted to be stated upon
general principles. Even if a creditor at large was
entitled to the action, facts are not well pleaded in the
present petition to state a case. To organize the War-
dell Land & Lumber Company was, of course, a per-
fectly legal act, as was also the rescission by the in-
dividual defendants, LaMothe, Murphy and Schwerd,
of the contract by which the former had sold to the
two latter his timber and mill. The tortious act, if
any there was, consisted in the subsequent conveyance
of the property to the Land & Lumber Company for
the purpose of preventing plaintiff from collecting the
debt LaMothe owed her. After the rescission of the
contract of sale, the title to the timber and mill stood
in LaMothe alone, and he had full power to convey
them to the company without the consent or assistance
of Murphy or Schwerd. Hence we do not perceive how
the averment that defendants caused all the right,
title and interest of LaMothe in the timber and mill
to be transferred to the company could be true, or
how Schwerd and Murphy could have aided in the
transfer so as to constitute them participants in the
fraud of LaMothe, if a fraud was intended by him.
What they could do to effect the transfer to the com-
pany that LaMothe was unable to do without their as-
sistance is neither shown by averments nor obvious in
itself.

Counsel for appellant cites us to the statute which
says every person, who, being a party to the sale and
delivery of any goods or chattels, or to any conveyance
or assignment of any estate or interest in real estate,
goods, chattels, etc., made or created with intent to
defraud prior or subsequent purchasers, or to hinder,

delay or defraud creditors or other persons, and every person privy to or knowing of such conveyance, assignment or charge, who shall willingly put the same in use, as having been made in good faith, shall, upon conviction be adjudged guilty of a misdemeanor. [R. S. 1899, sec. 1931.] It is argued a civil action for damages will lie for a violation of that section; but the averments of the petition do not suffice to state a case on the section if we grant one will lie. It is not alleged, expressly or by necessary implication, any of the defendants put in use the transfer by LaMothe to the company as having been made in good faith. From neither statutory nor common law point of view is a cause of action stated against all the defendants, and plaintiff asks no judgment against LaMothe for the debt he is said to owe.

The judgment is affirmed. All concur.