**MARK VII, INC., f/k/a MNX, Inc., and Missouri–Nebraska Express, Inc., Appellants,**

v.

**Stephen M. and Sherry E. BARTHOL, Financial Service, Inc., Defendants,**

**Jeffrey B. Tonkin, Respondent.**

**No. WD 51355.**

Missouri Court of Appeals, Western District.

May 28, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 2, 1996.

Application to Transfer Denied Aug. 20, 1996.

Kip D. Richards, Kansas City, for appellants.

Michael W. Manners, Independence, for respondent.

Before ULRICH, P.J., and BRECKENRIDGE and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

Appellants appeal from an order sustaining respondent's motion to dismiss appellants' claim for civil conspiracy under Mo. Rule 55.27(a)(6). Appellants assert on appeal that the trial court erred in dismissing Count IV of appellants' Second Amended Petition for Damages as against respondent because: 1) appellants do not have to allege that respondent interfered with a lien before they can maintain a claim for civil conspiracy against respondent as found by the court; and, 2) appellants' Second Amended Petition for Damages sets forth the elements necessary to state a cause of action for civil conspiracy against respondent with the specificity required by Missouri law.

## FACTS

This case arises out of a claim for civil conspiracy filed by appellants, Mark VII, Inc. (f/k/a MNX, Incorporated) and Missouri–Nebraska Express, Inc., against respondent, Jeffrey B. Tonkin, an attorney practicing in Kansas City, Missouri.

On or about February 6, 1989, MNX and Missouri–Nebraska executed a written contract with a Missouri corporation known as American Financial Services, Inc. ("AFS"). Under the terms of this agreement, AFS agreed to secure the financing necessary for Tractor Leasing, Inc. to obtain, as lessee, 100 semi-tractors. In exchange for the promises made by AFS, MNX and Missouri–Nebraska paid AFS $140,224.50. This sum was to be held by AFS as a security deposit in the financing/leasing arrangement and returned to MNX and Missouri–Nebraska if AFS

failed to procure the financing needed by Tractor Leasing, Inc. at the rate and under the terms specified in the February 6, 1989 contract.

AFS failed to fulfill its agreement with MNX and Missouri–Nebraska, and further refused to return the $140,224.50 despite its default. Consequently, on June 27, 1989, MNX and Missouri–Nebraska filed suit in the Circuit Court of Buchanan County, Missouri, against AFS to recover the damages resulting from the contractual breaches and tortious acts committed by AFS when it failed to secure the requisite financing and refused to return the $140,224.50 "commitment fee" as agreed. Tonkin was not a party to that cause of action. The case was transferred to Jackson County, Missouri.

During the course of the lawsuit against AFS, appellants sought to depose the corporation's principals, Steve Barthol and Robert Connor. Neither Barthol nor Connor appeared at their depositions and a default judgment was entered against AFS on November 5, 1990, in the amount of $301,510.52 plus interest.

Appellants executed against the property and effects of AFS and filed three garnishment actions against its accounts, but were only able to obtain a total of $12,774.88. The execution against AFS's property and effects was returned unsatisfied since respondent and the principals of AFS had hastily liquidated the company in November 1990, leaving only an empty shell.

Thus in 1991, appellants commenced the lawsuit from which this appeal arises. Originally, appellants named Steve Barthol and Robert Connor, the principals of AFS, as the only defendants; however, as discovery in the case progressed, Steve Barthol's wife, Sherry, was joined as an additional defendant, as was Evergreen Financial Services, Inc. ("EFS"), a company that Steve and Sherry Barthol formed within a month of the November 5, 1990 default judgment. Respondent was joined as a party-defendant in February 1995, after appellants confirmed that he had actively taken part in and otherwise encouraged and profited from the transactions under which AFS was liquidated and

EFS was organized as its "successor" in November and December of 1990.

On February 21, 1995, appellants filed their Second Amended Petition in which they pled four counts. Count I was denominated an Action to Pierce the Corporate Veil. Count II sought judgment against EFS on a theory of Successor Liability. Count III sought to set aside conveyances of property from AFS to various respondents on a theory of Fraudulent Conveyance. Count IV sought judgment against Tonkin. Appellants allege that in August 1990, respondent and the principals of AFS conspired or otherwise entered into a common plan or scheme designed to hinder, delay and defraud appellants by draining AFS of all its assets, thus making it impossible for appellants to collect their judgment against AFS. Appellants' claim for civil conspiracy is predicated on a series of alleged fraudulent conveyances and acts of corporate subterfuge that took place less than three months after obtaining their 1990 judgment. None of the allegations in the Second Amended Petition claim that any of the assets of the corporation that were alleged to be fraudulently conveyed were subject to a lien or other legal interest held by appellants.

On April 12, 1995, Tonkin filed a Motion to Dismiss Count IV of appellants' Second Amended Petition. He did so on three grounds. First, he averred that Count IV failed to state a cause of action because it did not allege that Tonkin interfered with a lien held by appellants. Second, he alleged that the Second Amended Petition failed to state a cause of action because it did not allege essential elements of conspiracy. Third, he claimed that appellants failed to join an indispensable party by dismissing their claim against Connor.

The circuit court heard respondent's motion to dismiss on May 12, 1995. The trial court entered an amended order on July 5, 1995, dismissing Count IV of appellants' Second Amended Petition. The court sustained the first prong of respondent's motion, basing its decision on *Dano v. Sharpe*, 236 Mo. App. 113, 152 S.W.2d 693 (1941) because appellants did not allege interference with a lien. The court also found that appellants

did not allege the elements of a cause of action for civil conspiracy with the specificity required under Missouri law, and that dismissal was appropriate for that alternative reason as well. The court did not find that appellants failed to name an indispensable party. As part of the amended order the trial court found that there was no just reason for delaying entry of a final judgment in favor of Tonkin under Mo. Rule 74.01(b). On July 14, 1995, appellants appealed to this court. On August 7, 1995, plaintiffs and the remaining defendants filed a stipulation dismissing the case against the remaining defendants.

## I.

The basis for granting respondent's motion to dismiss appellants' claim for civil conspiracy was two—fold: (1) appellants' failure to allege that respondent interfered with a lien; and, (2) appellants' failure to plead with sufficient specificity the necessary elements to state a cause of action for civil conspiracy. We will look first at the lien issue.

■ The standard of review when a case is dismissed under Rule 55.27(a)(6) is "whether, after allowing the pleading its broadest intendment, treating all facts alleged as true and construing all allegations favorably to plaintiffs, the averments invoke principles of substantive law entitling plaintiffs to relief." *Lowrey v. Horvath*, 689 S.W.2d 625, 626 (Mo. banc 1985). While appellants admit they did not plead the existence of a lien, they claim that there is no such requirement. We, therefore, must decide whether, as a matter of substantive law, a creditor must have a lien or other interest in the property of its debtor which was fraudulently transferred in order to maintain a cause of action for civil conspiracy based on the fraudulent transfer.

■ "A 'civil conspiracy' is an agreement or understanding between two [or more] persons to do an unlawful act, or to use unlawful means to do an act which is lawful." *Ritterbusch v. Holt*, 789 S.W.2d 491, 494 (Mo. banc 1990). Civil conspiracy is not a cause of action in and of itself; rather, it extends liability based on an underlying wrongful act. *Royster v. Baker*, 365 S.W.2d 496, 499 (Mo.1963); *Williams v. Mercantile*

*Bank of St. Louis NA*, 845 S.W.2d 78, 85 (Mo.App.1993). The basis of civil conspiracy is "the wrong done by acts in furtherance of the conspiracy or concerted design resulting in damage to plaintiff." *Royster*, 365 S.W.2d at 499. If a civil conspiracy is proved, the defendants are held liable for the underlying wrongful act as joint tortfeasors. *C.A.L., Inc. v. Worth*, 813 S.W.2d 12, 15 n. 3 (Mo. App.1991).

■ In 1941, this court held that the general rule is that without a lien, a mere general creditor does not have a sufficient right or interest in his debtor's property to give him standing to maintain a suit against a third person converting the debtor's property with the intent to defraud the debtor's creditors. *Dano v. Sharpe*, 236 Mo.App. 113, 152 S.W.2d 693, 694 (1941). This general rule was developed in numerous cases nationwide. *See, e.g.*, 11 A.L.R.4th 345, 360–61 § 8[a] (1982). The *Dano* court recognized that if the defendant destroys or definitely impairs a lien, the plaintiff is entitled to maintain an action for civil conspiracy. *Dano*, 152 S.W.2d at 695, *citing Adler v. Fenton*, 24 How. 407, 65 U.S. 407, 16 L.Ed. 696 (1860).

This court's decision in *Dano* was consistent with the earlier case of *Fernandez v. La Mothe*, 147 Mo.App. 644, 127 S.W. 408 (1910). In *Fernandez*, the court set forth the reasons behind the lien requirement. First, the court held that the lien requirement exists because

the courts think damages might be recovered, though, in the nature of things, it is impossible to prove with requisite certainty the creditor would have been able to collect his alleged demand from the property fraudulently disposed of if there had been no such disposition of it, or that he was prevented by the fraud from reaching property of the debtor sufficient to satisfy his claim.

*Id.* at 410. Thus, the lien ensures that the conspiracy is not too remotely related to the damages alleged. *Id.* We view this as a causation issue.

Second, the lien protects against a notice problem. There is a "practical inconvenience of the remedy and the chance of its working

injustice to other creditors of the debtor than the one who files the first action." *Id.* Oftentimes, more than one creditor will have been defrauded. Rather than having a race to the courthouse, the lien provides the avenue for a court to apportion the property's value among other creditors. *Id.*

Inherent in the above two policy reasons supporting the lien requirement is the speculative nature of the amount of damages suffered by the creditor. The lien permits the court to determine the extent to which the creditor was damaged if it is otherwise unclear from the evidence.

Appellants cite us to a number of cases which they claim support their theory that a lien is not required, including *Findlay v. McAllister,* 113 U.S. 104, 5 S.Ct. 401, 28 L.Ed. 930 (1885); *Thomas v. Shoots,* 651 S.W.2d 663, 666 (Mo.App.1983); *Haynes v. Hawkeye Sec. Ins. Co.,* 579 S.W.2d 693, 699–704 (Mo.App.1979); and *United States ex rel. Goldman v. Meredith,* 596 F.2d 1353, 1357 (8th Cir.), *cert. denied,* 444 U.S. 838, 100 S.Ct. 76, 62 L.Ed.2d 50 (1979). None of these cases involved a claim of civil conspiracy based on the underlying wrongful act of a fraudulent transfer and thus are distinguishable. We also find nothing in these cases to persuade us to depart from the long-established lien requirement as stated in *Fernandez* and *Dano.* Though the rule has not been restated for quite some time, its precedential value has not diminished. Because we find the reasons behind the lien requirement are equally valid today, we reaffirm the holding of *Dano.*

Appellants argue in their Reply Brief that their civil conspiracy claim was not based solely on the fraudulent conveyances, but also on acts of corporate subterfuge and, therefore, the enforcement of the lien requirement should not automatically defeat their claim. We look to their petition to determine what their claim truly is.

In the petition, appellants referenced a number of acts taken to liquidate AFS and turn it into a shell corporation. While appellants label these acts as corporate subterfuge, the alleged actions are simply fraud. The alleged fraudulent liquidation of AFS constitutes the alleged fraudulent conveyances. Appellants cite cases holding the alleged fraud sufficient to support piercing the corporate veil. We agree; a series of fraudulent conveyances in the liquidation of an existing company in order to set up a shell corporation could provide cause to pierce the corporate veil. However, these actions are the same fraudulent conveyances which we hold under *Dano* require a lien to support a claim for civil conspiracy. Appellants cannot evade existing caselaw by engaging in a semantical alteration of the facts.

Because our holding on Count I is dispositive, there is no need for us to discuss the trial court's second reason for dismissing the claim—that the pleadings lacked sufficient specificity in alleging a civil conspiracy.

The judgment of the circuit court dismissing this case for failing to state a cause of action is affirmed.

All concur.